133 T.C. No. 1


UNITED STATES TAX COURT


HIGHWOOD PARTNERS, B & A HIGHWOODS INVESTMENTS, LLC, TAX MATTERS
PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24463-06.                    Filed August 13, 2009.


        R issued P a notice of final partnership
administrative adjustment (FPAA) after expiration of
the 3-year period of limitations under sec. 6501(a),
I.R.C., with respect to the assessment of income tax of
the partners.  The FPAA determined overstatements of
the bases of partnership interests and certain other
assets.  R asserts that there was a substantial
omission from gross income because the partnership and
the partners failed to separately reflect the gain and
loss from long and short options as required by sec.
988, I.R.C., and the 6-year period of limitations for a
substantial omission from gross income under sec.
6501(e), I.R.C., applies.  P asserts that the
partnership and the partners properly reported the net
loss from the long and short options and no omission
occurred.  The parties have filed cross-motions for
summary judgment on the question of the applicability
of sec. 6501(e), I.R.C.

Held: P's motion for summary judgment will be denied because the partnership and the partners omitted gross income by failing to separately compute foreign currency gain and loss pursuant to sec. 988, I.R.C., and the 6-year limitations period under sec. 6501(e), I.R.C., applies; and R's FPAA asserts alternative theories that would make the sec. 6501(e), I.R.C., 6-year limitations period applicable if sustained.

Held, further, R's motion for partial summary judgment will be denied because the Court will not render an opinion whether sec. 6501(e), I.R.C., would be applicable under R's economic substance or sham argument if that is the only position R is able to sustain, unless such a determination is necessary to resolve the case.

David D. Aughtry and William E. Buchanan, for petitioner.

William F. Castor, for respondent.

OPINION

GOEKE, Judge:  This case is before the Court on the parties' cross-motions for summary judgment pursuant to Rule 121.[1] Petitioner filed a motion for summary judgment arguing that respondent failed to issue the FPAA before the expiration of the 3-year limitations period provided in section 6501(a). Respondent opposes petitioner's motion and has filed a cross-motion for partial summary judgment arguing that the 6-year limitations period for a substantial omission of gross income in

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code (Code).

section 6501(e)(1) applies. The issues for decision are whether respondent is foreclosed by the explanations in the FPAA from asserting the 6-year limitations period under section 6501(e)(1) and the related issue whether the returns filed with respect to the partners, the partnership, or a related S corporation, Highwood Investors, Inc. (Highwood Investors), adequately disclosed the nature and amount of the omitted gross income.

We will deny petitioner's motion because we hold that the partners' returns contained a substantial omission from gross income within the meaning of section 6501(e)(1) as filed and that none of the relevant returns adequately disclosed the nature or amount of the omitted income. Respondent's partial summary judgment motion will also be denied without prejudice because resolution of the issues raised would require a ruling on an issue that the Court might not otherwise have to reach.

### Background

For purposes of the pending motions, we assume the following facts. The parties treated Highwood Partners (Highwood) as having a principal place of business in Virginia for purposes of appellate venue under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648.

The ultimate taxpayers are Michael and Karen Booth Adams, Richard and Mary Fowlkes, and the Booth and Adams Irrevocable Family Trust (the trust). On November 12, 1999, following the

advice of the law firm of Jenkens & Gilchrist, Mrs. Adams, Mrs. Fowlkes, and the trust (the partners) each formed a single-member limited-liability company or L.L.C. (collectively, the LLCs). The LLCs were disregarded entities for Federal income tax purposes. On that same date, Mrs. Adams, Mrs. Fowlkes, and the trust, through their single-member LLCs, formed Highwood and owned partnership interests of 47.62, 29.76, and 22.62 percent, respectively.

On November 22, 1999, each of the LLCs entered into foreign exchange digital option transactions (FXDOTs) with Deutsche Bank AG New York branch (Deutsche Bank), in which the LLCs purchased a 30-day European-style digital option spread based on the U.S. dollar/Japanese yen (USD/JPY) exchange rate. The parties to a European-style option can exercise the option only on its termination date. A digital option has a predetermined fixed payout upon the parties' agreement at the time of the option's inception.

The notional principal amounts, the premiums, and the contingent payments of the FXDOTs varied among the LLCs. Through their respective LLCs, Mrs. Adams, Mrs. Fowlkes, and the trust entered into FXDOTs with notional principal amounts of $8 million, $5 million, and $3.8 million, respectively. Through their respective LLCs, Mrs. Adams, Mrs. Fowlkes, and the trust paid premiums with respect to the long leg of the FXDOTs of $4

million, $2.5 million, and $1.9 million, respectively, and received premiums with respect to the short leg of the FXDOTs of $3,960,000, $2,475,000, and $1,881,000, respectively.

In the long leg of each FXDOT, the LLCs paid an initial amount in exchange for the right to receive a predetermined, fixed amount from Deutsche Bank (long option) if the spot rate on the USD/JPY exchange rate was greater than or equal to ¥107.27 at 10 a.m. New York local time on the termination date. In the short leg of each FXDOT the LLCs received an initial amount from Deutsche Bank in exchange for agreeing to pay a specified, fixed amount (short option) if the spot rate on the USD/JPY exchange rate was greater than or equal to ¥107.29 at 10 a.m. New York local time on the termination date. The premiums paid by and to the LLCs, and the contingent payments to be paid to and by the LLCs, were all denominated in U.S. dollars. However, whether payments were required to be made would be determined by reference to the value of the Japanese yen.

The parties to the FXDOTs confirmed the terms of each FXDOT by letters dated November 30, 1999, that both parties to each FXDOT signed. The combined premium on the long component of the FXDOTs was $8,400,000, and the combined premium on the short component of the FXDOTs was $8,316,000. The partners, through their LLCs, paid only the net premium on the FXDOT, the difference between the premiums on the long and short components.

The partners paid a combined net premium of $84,000.  On November 23, 1999, the partners contributed the options, cash, and shares of Heilig-Meyers Co. (Heilig-Meyers) and Modis Professional Services, Inc. (Modis) stock to Highwood.  In calculating their contributions for purposes of determining their outside bases in Highwood, the partners included the long option premiums of $8,400,000 unreduced by the short option premiums of $8,316,000.

On December 22, 1999, the FXDOTs expired unexercised while held by Highwood.  The next day Mrs. Adams and Mrs. Fowlkes, through their LLCs, assigned their respective Highwood interests to a newly incorporated S corporation, Highwood Investors.[2]  In determining their outside bases in Highwood, Mrs. Adams and Mrs. Fowlkes included the premiums on the long options totaling $6,500,000 unreduced by the premiums on the short options totaling $6,435,000.  Upon the contribution of their partnership interests to Highwood Investors, Mrs. Adams' and Mrs. Fowlkes' outside bases in Highwood carried over to Highwood Investors pursuant to section 362(a).

On or about December 29, 1999, Highwood distributed cash and the Heilig-Meyers and Modis stock to Highwood Investors and the trust in full redemption of their partnership interests.  Pursuant to section 732(b), Highwood Investors and the trust

[2]Mrs. Adams and Mrs. Fowlkes owned 61.54045 and 38.45955 percent of Highwood Investors, respectively.

determined their adjusted bases in the distributed property by reference to their outside bases in Highwood immediately before the distribution, which they treated as having been increased by the long option premiums but not reduced by the short option premiums. Highwood Investors sold the Heilig-Meyers and Modis stock on December 30, 1999, at a claimed loss of $6,435,466. This loss resulted in part from the stepped-up bases under section 732(b) because Highwood did not reduce the partners' outside bases by the premiums from the short options. The pro rata shares of the losses on the stock sales, $3,960,415 and $2,307,690, passed through to Mrs. Adams and Mrs. Fowlkes, respectively. Likewise, the trust claimed a stepped-up basis in its shares of the Heilig-Meyers and Modis stock and sold the stock on December 30, 1999, for a claimed loss of $1,769,353.

On its Form 1065, U.S. Partnership Return of Income, filed for the taxable year ended December 28, 1999, Highwood reported contributions of $8,552,011 without disclosing that the contributions included the long option premiums of $8,400,000 unreduced by the short option premiums of $8,316,000. Highwood also reported a loss of $84,000 realized upon the expiration of the FXDOTs as "Other income (loss)". To determine the $84,000 net loss, Highwood treated the expiration of the long options as causing the realization of a loss equal to the long option premiums of $8,400,000 and treated the expiration of the short

options as causing the realization of a gain equal to the premiums of $8,316,000.[3] Highwood attached a statement to its return describing the $84,000 loss as a section 988 loss. However, Highwood did not disclose that the net loss resulted from the expiration of the long and short options and did not separately report the $8,400,000 loss from the long options and the $8,316,000 gain from the short options.

Each partner reported a pro rata share of the $84,000 net loss without disclosing that the loss resulted from the expiration of the long and short options. The Adamses' return reported the loss as a nonpassive loss from a partnership and included a statement identifying the loss as a section 988 loss that passed through from an LLC. The Fowlkeses included the loss on their return without identifying the loss as passing through from an LLC or as a section 988 loss. The trust reported its share of the loss as "other income" from an LLC. None of the partners reported a gain from the expiration of the short options. It is the reporting of the expiration of the long and short options that is the subject of the controversy before us.

---

[3]If a call option expires unexercised, the expiration is treated as a sale or exchange on the expiration date. Sec. 1234(a)(1) and (2). The holder of the option (i.e., Highwood with respect to the long leg of the FXDOTs) would realize a loss upon the expiration in the amount of the premium paid for the option. Rev. Rul. 78-182, 1978-1 C.B. 265. The obligor of the option (i.e., Highwood with respect to the short leg of the FXDOTs) would realize a gain upon the expiration. Sec. 1234(b)(1); Rev. Rul. 78-182, supra.

On its 1999 S corporation return, Highwood Investors reported a short-term capital loss from the sale of the Heilig-Meyers stock of $2,996,411 using a sale price of $14,737 and a cost of $3,011,148. Highwood Investors reported the acquisition and sale dates of the Heilig-Meyers stock as December 17 and 30, 1999, respectively. Highwood Investors reported a long-term capital loss from the sale of the Modis stock of $3,439,055 using a sale price of $16,287 and a cost of $3,455,342. Highwood Investors reported the acquisition and sale dates of the Modis stock as September 10, 1998, and December 30, 1999, respectively.

On their Forms 1040, U.S. Individual Income Tax Return, for 1999, the Adamses and the Fowlkeses reported long-term capital gains on the sale of stock in IXL Enterprises, Inc. (IXL), of $2,585,924 and $2,307,690, respectively. The Adamses' and the Fowlkeses' returns reported passthrough losses from Highwood Investors to offset the capital gains from the IXL stock. The Adamses reported a short-term capital loss of $1,844,005 and a long-term capital loss of $2,116,410 from Highwood Investors. The Fowlkeses reported a net short-term capital loss and a net long-term capital loss from partnerships and other passthrough entities of $1,152,406 and $1,322,645, respectively.

On its 1999 Form 1041, U.S. Income Tax Return for Estates and Trusts, the trust reported a long-term capital gain on the sale of IXL stock of $1,777,494. Likewise, the trust offset its

gain on the sale of the IXL stock with losses from the sale of the Heilig-Meyers and Modis stock. On its 1999 return, the trust reported a short-term capital loss of $823,794 from the sale of the Heilig-Meyers stock using a sale price of $4,131 and a cost of $827,925. The trust reported the acquisition and sale dates as December 17 and 30, 1999, respectively. The trust reported a long-term capital loss of $945,559 from the sale of the Modis stock using a sales price of $4,509 and a cost of $950,068. The trust reported the Modis stock as a gift and provided only a sale date of December 30, 1999, not an acquisition date. On their 1999 returns, the Adamses, the Fowlkeses, and the trust reported $6,615,451.84, $3,216,290, and $1,777,494 of gross income, respectively.

Highwood and the partners timely filed their respective returns for 1999 on or before April 15, 2000. On June 19, 2003, respondent served a "John Doe" summons on Jenkens & Gilchrist seeking information about taxpayers who participated in listed transactions. On May 17, 2004, Jenkens & Gilchrist provided information in response to the summons, identifying the Adamses, the Fowlkeses, and the trust as having participated in a listed transaction. Respondent issued an FPAA to Highwood on August 30, 2006, after the expiration of the 3-year limitations period on assessment and collection under section 6501(a) with respect to the partners but within the 6-year limitations period on

assessment and collection under section 6501(e)(1) if that section applies.[4]

In the FPAA respondent adjusted the items on Highwood's return to zero, including the $84,000 loss reported as other income, and asserted various penalties.[5]  Attached to the FPAA was a document titled "EXHIBIT A - Explanation of Items".  The explanation of items provided numerous alternative arguments in support of the adjustments made by the FPAA:

(1)  That neither Highwood nor its partners had established the existence of Highwood as a matter of fact;

(2)  that even if Highwood was established as a partnership in fact, it was formed and availed of solely for purposes of tax avoidance by artificially overstating its partners' outside bases.  As a consequence, the partnership and the options should be disregarded in full and any losses and basis adjustments resulting from the options should also be disallowed.  Further, the partners should be treated as having engaged directly in the

---

[4]If sec. 6501(e)(1) applies, the limitations period would be suspended for a period of 151 days beginning on Dec. 18, 2003 (6 months after service of the John Doe summons), until May 17, 2004, when the information was provided.  See sec. 7609(e)(2). The parties agree that, for purposes of the pending motions, if sec. 6501(e)(1) applies, then the FPAA was issued while the period for assessing tax against the partners was open and would suspend that period under sec. 6229(d).

[5]The FPAA also adjusted to zero an $80,000 deduction related to portfolio income, capital contributions, and distributions.

option transactions as though no options were contributed to or assumed by Highwood;

(3) that Highwood was a sham and availed of in connection with a transaction inconsistent with the intent of subchapter K of the Code;

(4) that the short options should have been treated as liabilities under section 1.752-6, Income Tax Regs., and reduced the partners' bases in Highwood accordingly;

(5) that the purchased options claimed to have been contributed to Highwood and the written options claimed to have been assumed by Highwood were in substance a single integrated financial transaction, and, pursuant to section 1.988-2(f), Income Tax Regs., should be recharacterized as a single integrated financial transaction to correspond with its substance. A result of this recharacterization would be that any basis in Highwood that was derived from the option spreads would be limited to the net of any premiums paid for the purchased options and any premiums received for the written options;

(6) that the partners were not entitled to deduct losses related to Highwood because the partners did not establish that the partners had any at-risk amounts within the meaning of section 465 that would allow them a deduction;

(7) that even if the FXDOTs were treated as contributed to Highwood, the amount contributed, i.e., the premium paid for the

long option, should be reduced by the amount received, i.e., the premium on the sale of the short option.

The FPAA also explained the disallowance of a claimed deduction for interest income and explained the reasoning behind the imposition of alternative penalties under section 6662.

## Discussion

Respondent argues that petitioner's motion should be denied and respondent's motion granted because Highwood's and the partners' failure to report the $8,316,000 gain realized on the expiration of the short options constitutes an omission of gross income under section 6501(e). Petitioner argues that its motion should be granted on the ground that neither Highwood nor its partners omitted any income because the expiration of the long and short options resulted in an $84,000 net loss. If Highwood had reported the expiration of the short and long options as separate taxable events, the options would have resulted in income of $8,316,000 from the expiration of the short options and a loss of $8,400,000 from the expiration of the long options.

## I. Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine issue of any material fact and a decision may be rendered as a matter of law. Rule 121(a) and

(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are drawn in a manner most favorable to the party opposing summary judgment. <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985).

## II. Section 6501 Burden of Proof

The bar of the statute of limitations is an affirmative defense, and petitioner bears the burden of proof. See Rules 39, 142(a); <u>Hoffman v. Commissioner</u>, 119 T.C. 140, 146 (2002). We find that petitioner has established a prima facie case that the 3-year period of limitations has expired. Accordingly, the burden of going forward shifts to respondent to produce evidence that there was a greater than 25 percent omission of gross income on each partner's or the partnership's return. See <u>Hoffman v. Commissioner</u>, <u>supra</u> at 146. If respondent makes this showing, the burden of going forward with the evidence shifts back to petitioner to establish that the returns disclosed the omitted income "in a manner adequate to apprise the Secretary of the nature and amount of such item." See sec. 6501(e)(1)(A)(ii); <u>Hoffman v. Commissioner</u>, <u>supra</u> at 147.

## III. Sections 6501 and 6229 in General

Under the general rule set forth in section 6501(a), the Internal Revenue Service (IRS) is required to assess tax (or send

a notice of deficiency) within 3 years after a return is filed. Section 6501(e)(1) provides an exception to the general rule: the IRS may assess tax within 6 years after a return is filed "If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return".

For purposes of section 6501, the term "return" means the return that a taxpayer is required to file and does not include a return of a person, such as a partnership, from which the taxpayer has received an item of income, gain, loss, deduction, or credit.  Sec. 6501(a).  Section 6229 sets forth special rules to extend the period of limitations described by section 6501 with respect to partnership items or affected items.  Section 6229(a) provides that, except as otherwise provided, the period for assessing any income tax against a person that is attributable to a partnership item or an affected item shall not expire before the date that is 3 years after the later of the date that the partnership return is filed or the last day for filing the return.  However, section 6229(c)(2) provides that if any partnership omits from gross income an amount properly includable therein that is in excess of 25 percent of the amount of gross income stated in its return, the period described in section 6229(a) is extended to 6 years.

Section 6229 does not create a completely separate statute of limitations for assessments attributable to partnership items but merely supplements section 6501. Bakersfield Energy Partners, LP v. Commissioner, 128 T.C. 207, 211 (2007), affd. 568 F.3d 767 (9th Cir. 2009); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 545 (2000). Section 6229 may provide a longer period of limitations than would otherwise apply under section 6501 if a partnership files its return after the partners file their returns and will extend the period of limitations to 6 years if the partnership omits a substantial amount of income regardless of whether section 6501(e)(1) applies.

In Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, supra at 534-535, the Court stated:

> The Internal Revenue Code prescribes no period during which TEFRA partnership-level proceedings, which begin with the mailing of the notice of final partnership administrative adjustment, must be commenced. However, if partnership-level proceedings are commenced after the time for assessing tax against the partners has expired, the proceedings will be of no avail because the expiration of the period for assessing tax against the partners, if properly raised, will bar any assessments attributable to partnership items.

Accordingly, while the period for assessing partnership items is ordinarily governed by each partner's separate period for assessment, the Court will not consider adjustments made in an FPAA if the FPAA has been issued after the time for assessing tax

against all of the partners has expired.  Id. at 542.  Section 6229(d) provides that if an FPAA is issued with respect to a taxable year, the period for assessing tax under section 6229(a) (as modified by other provisions such as section 6229(c)(2)) is suspended for the period during which an action may be brought under section 6226 and, if a petition is filed with respect to the FPAA, until the decision of the court becomes final, plus 1 year thereafter.  Accordingly, the issue we must decide is whether the FPAA was issued while the time for assessing taxes against any of the partners was still open.  See Bakersfield Energy Partners, LP v. Commissioner, supra at 212.

IV.  Analysis

A.  Omission From Gross Income Upon the Expiration of the Short Option

Respondent alleges that the deficiency arises from the partners' artificially overstated outside bases in their Highwood partnership interests which the partners shifted to the Heilig-Meyers and Modis stock.  For purposes of the 6-year period of limitations, respondent contends that the partners omitted income arising upon the expiration of the short options, which constitutes a "substantial omission of gross income" under section 6501(e)(1).  The FPAA did not make an adjustment with respect to income from the short options.  Petitioner contends that Highwood reported the income from the short options because it reported the $84,000 net loss on the offsetting options.

Although not based on income from the options, the deficiency determination is related to the options because the offsetting options were a crucial component of the partners' alleged tax-avoidance scheme. The partners contributed the options along with the Heilig-Meyers and Modis stock to the newly formed partnership. According to respondent, the partners claimed artificially inflated outside bases in their Highwood interests by using the long options to increase their outside bases and treating the short options as contingent obligations that did not reduce their outside bases under section 752. Within a period of less than 2 months, the options expired unexercised, Highwood redistributed the Heilig-Meyers and Modis stock, and the partners shifted the artificially inflated outside bases to the stock. The partners then sold the stock to generate large capital losses based on the inflated bases. Respondent alleges that the partners created the partnership and artificially inflated the bases in the Heilig-Meyers and Modis stock for the purpose of offsetting significant capital gains from the partners' sales of IXL stock.

Section 6501(e)(1) applies when a taxpayer omits from gross income an "amount properly includible therein". Section 6501(e)(1) does not define the term "gross income" for nontrade or nonbusiness sales. Gross income has the same meaning in sections 61 and 6501(a). Hoffman v. Commissioner, supra at 148. Although

the FPAA determined overstated bases for the partnership interests, neither party contends that <u>Colony v. Commissioner</u>, 357 U.S. 28 (1958), and <u>Bakersfield Energy Partners, L.P. v. Commissioner</u>, <u>supra</u>, control the outcome of this case. Rather, the parties focus on whether Highwood and the partners properly reported the offsetting options as a net loss.

The term "omission" means that a specific receipt or income item is left out of gross income. <u>Colony v. Commissioner</u>, <u>supra</u> at 32; see <u>Bakersfield Energy Partners, L.P. v. Commissioner</u>, <u>supra</u> at 213. The fact that Highwood accurately calculated the amount of the net loss arising from the offsetting options does not preclude the application of the 6-year limitations period if Highwood or the partners were required to compute and report any gain from the short options separately from any loss from the long options.

Respondent contends that section 988 and the regulations thereunder required Highwood and the partners to separately state the gain upon the expiration of the short options from the loss upon the expiration of the long options. Section 988 prescribes special rules for the treatment of gains and losses from transactions that are denominated in a currency other than the taxpayer's functional currency or that are determined by reference to the value of one or more nonfunctional currencies (foreign currency gain or loss). Sec. 988(c)(1)(A). A section 988

transaction includes "Entering into or acquiring any forward contract, futures contract, option, or similar financial instrument" where the amount that the taxpayer is entitled to receive or is required to pay is based on nonfunctional currency. Sec. 988(c); sec. 1.988-1(a)(1), Income Tax Regs.  Because the payments to be made were determined by reference to a foreign currency, section 988 applies to Highwood and the partners' reporting of the long and short options.

B.    Definition and Computation of Foreign Currency Gain or Loss

Section 988(a)(1)(A) requires taxpayers to compute separately any foreign currency gain or loss attributable to a section 988 transaction and to treat the foreign currency gain or loss as ordinary income or loss.  Foreign currency gain or loss is generally defined as any gain or loss from a section 988 transaction to the extent the gain or loss does not exceed the gain or loss realized by reason of changes in exchange rates. Sec. 988(b)(1) and (2).  Only the gain or loss due to exchange rate fluctuations is generally treated as foreign currency gain or loss.  Taxpayers must separately compute foreign currency gain or loss from the gain or loss on the underlying substantive transaction, i.e., the fluctuation in the fair market value of the underlying property, unless an exception applies.

In general any gain or loss from entering into or acquiring a forward contract, futures contract, option, or similar financial

instrument is treated as foreign currency gain or loss if the instrument is denominated in a nonfunctional currency. Sec. 988(b)(3); sec. 1.988-1(a)(2)(iii)(A), Income Tax Regs. The term "similar financial instrument" includes a notional principal contract if the payments required to be made or received under the contract are determined by reference to a nonfunctional currency. Sec. 1.988-1(a)(2)(iii)(B)(1), Income Tax Regs. A notional principal contract is a contract that provides for the payment of amounts by one party to another at specified intervals calculated by reference to a specified index upon a notional principal amount in exchange for specified consideration or a promise to pay similar amounts. Sec. 1.988-1(a)(2)(iii)(B)(2), Income Tax Regs.; see also sec. 1.446-3(c)(1), Income Tax Regs. The FXDOTs qualify as section 988 transactions because whether payments had to be made was determined by reference to a nonfunctional currency, the Japanese yen.

Section 1.988-2, Income Tax Regs., provides rules for recognizing and computing foreign currency gain or loss from a section 988 transaction.[6] Section 1.988-2(d), Income Tax Regs., provides a computational provision for foreign currency derivatives including forward contracts, futures contracts, and option contracts governed by section 988(b)(3). Sec. 1.988-

---

[6]The regulations refer to foreign currency gain or loss as "exchange gain or loss".

2(d)(1)(i), Income Tax Regs.  Section 1.988-2(d)(4)(i), Income Tax

Regs., provides:

> (4) Determination of exchange gain or loss--(i) In general.  Exchange gain or loss with respect to a contract described in § 1.988-2(d)(1) [i.e., foreign currency forward contracts, futures contracts, and options] shall be determined by subtracting the amount paid (or deemed paid), if any, for or with respect to the contract (including any amount paid upon termination of the contract) from the amount received (or deemed received), if any, for or with respect to the contract (including any amount received upon termination of the contract).  Any gain or loss determined according to the preceding sentence shall be treated as exchange gain or loss.

Under the computation provisions of section 1.988-2(d), Income Tax

Regs., foreign currency gain or loss on an option includes both

the gain or loss upon the exercise or expiration of the option and

the premium paid or received on the option.  See sec. 1.988-

2(d)(4), Example (3), Income Tax Regs.  Section 1.988-2(d), Income

Tax Regs., does not apply to section 988 notional principal

contracts even though they qualify as financial instruments

governed by the section 988(b)(3) definition of foreign currency

gain or loss.  Section 1.988-2(e)(1), Income Tax Regs., applies to

section 988 notional principal contracts defined in section 1.988-

1(a)(1)(ii) and (2)(iii), Income Tax Regs.  Sec. 1.988-2(d)(1)(i),

Income Tax Regs.  In general section 446 and the regulations

thereunder govern the timing and computation of income, deduction,

and loss with respect to a notional principal contract that is a

section 988 transaction.  Sec. 1.988-2(e)(1), Income Tax Regs.

However, section 1.988-2(e)(1), Income Tax Regs., does provide

that such income, deduction, or loss shall be treated as exchange gain or loss.

    C.    Reporting of a Section 988 Transaction

Section 1.988-1(e), Income Tax Regs., defines foreign currency gain or loss as the amount of gain or loss realized on a section 988 transaction as determined by the computational provisions of section 1.988-2, Income Tax Regs.  Section 1.988-1(e), Income Tax Regs., adds a further requirement that taxpayers compute foreign currency gain or loss separately for each section 988 transaction and prohibits taxpayers from integrating the foreign currency gain or loss among section 988 transactions even where the transactions are economically related.  Section 1.988-1(e), Income Tax Regs., provides:

> Except as otherwise provided in these regulations (e.g. § 1.988-5), the amount of exchange gain or loss from a section 988 transaction shall be separately computed for each section 988 transaction, and such amount shall not be integrated with gain or loss recognized on another transaction (whether or not such transaction is economically related to the section 988 transaction). * * *

The regulations specifically require taxpayers to separately compute and report the amount of foreign currency gain or loss realized on each section 988 transaction.  See T.D. 8400, 1992-1 C.B. 101, 102 (amending the regulation to clarify that the foreign currency gain or loss from a section 988 transaction must be separately computed for each section 988 transaction).  The regulations prohibit taxpayers from netting foreign currency gains

or losses among section 988 transactions unless an exception applies.

Respondent argues that Highwood and the partners improperly netted the foreign currency gain and loss on the offsetting long and short options. Respondent argues that section 1.988-1(e), Income Tax Regs., requires Highwood and the partners to separately report the gain arising upon the expiration of the short options and to separately report the loss arising upon the expiration of the long options. Under respondent's theory, the short leg of the FXDOT is a section 988 transaction, and the long leg is a separate section 988 transaction. Respondent asserts that Highwood and the partners' failure to separately report the gain from the short options is an omission from gross income for purposes of section 6501(e).

Petitioner acknowledges that section 1.988-1(e), Income Tax Regs., provides a general rule for the separate computation of foreign currency gain and loss for each section 988 transaction subject to certain enumerated exceptions provided in the regulations. However, petitioner argues that the application of section 1.988-1(e), Income Tax Regs., to the FXDOT does not require the separate reporting of the gain from the short options and the loss from the long options because each pair of long and short options in the FXDOT is a single section 988 transaction. According to petitioner, since each pair is a single section 988

transaction, netting of the gain and loss upon the expiration of the long and short options is permitted under section 988. In the alternative, petitioner argues that respondent's FPAA determination to recharacterize the substance of the long and short legs of each FXDOT as a "single integrated financial transaction" under section 1.988-2(f), Income Tax Regs., is an exception to the separate reporting requirement of section 1.988-1(e), Income Tax Regs. We must decide whether the offsetting long and short options constitute separate section 988 transactions.

Petitioner argues that each FXDOT consisting of an offsetting pair of long and short options is a single section 988 transaction because the same parties executed the options on a single contract on the same date with one set of signatures. In support of this contention petitioner offered letter agreements executed more than 1 week after the parties entered the FXDOT by telephone that evidence the terms of a single pair of long and short options. The postdated letters do not persuade us that the long and short options are a single contract. Rather, we find that the long and short options are separate and distinct financial instruments for purposes of section 988.

Highwood and the partners treated the long and short options as separate financial instruments with independent tax significance for purposes of the basis computation of the Highwood partnership interests. As Highwood and the partners intended for

the long and short options to have separate tax significance, Highwood and the partners should be held to their treatment of the long and short options as separate financial instruments for reporting purposes as required by section 988. The expirations of the long and short options are separate realization and recognition events that each require the determination of gain or loss. That the parties purported to execute the long and short options on a single contract does not control the determination under section 988 of whether the options are separate section 988 transactions. Similarly, the fact that the options had the same trade and termination dates or involved the same currencies is not determinative. The long and short options were priced separately. Whether the LLCs or Deutsche Bank was required to make payments to the other under either the long or the short option would be determined by reference to the separate contract. For example, the determination whether the LLCs were required to make payments to Deutsche Bank under the short option would be determined by reference to the short option only. The same is true of the long option. Whether Deutsche Bank would have to make payments to the LLCs under the long option would be determined solely by reference to the long option. The short option would not affect any payments made by Deutsche Bank to the LLCs, and the long option would not affect any payments made by the LLCs to Deutsche Bank. The regulations expressly require separate reporting of individual

section 988 transactions even where the transactions are economically related.  Sec. 1.988-1(e), Income Tax Regs. Pursuant to section 1.988-1(e), Income Tax Regs., Highwood and the partners were required to compute and report the gain on each short option separately from the loss on each long option. Highwood and the partners' netting of the gain and loss from the long and short options was improper under section 988.  By netting the gain and loss from the long and short options, Highwood and the partners omitted a specific income item the Code required them to report.  As discussed above, the long and short options are separate financial instruments, not two sides of a single contract.  Accordingly, section 1.988-2(d)(4)(i), Income Tax Regs., does not apply in the instant case.

As an alternative argument, assuming the long and short components of the FXDOTs constitute separate section 988 transactions, petitioner contends that respondent's alternative FPAA determination to recharacterize the long and short options as "a single integrated financial transaction" under section 1.988-2(f), Income Tax Regs., renders the long and short options a single section 988 transaction.  As an alternative position in the FPAA, respondent determined that the long and short options were in substance a single integrated financial transaction pursuant to section 1.988-2(f), Income Tax Regs.  Section 1.988-2(f), Income Tax Regs., grants the Commissioner the authority to recharacterize

the form of a section 988 transaction in accordance with its substance.[7]  The regulation specifically provides that "In applying the substance over form principle, separate transactions may be integrated where appropriate."  Id.

Petitioner argues that section 1.988-1(e), Income Tax Regs., expressly recognizes that exceptions to the separate reporting rule exist and that section 1.988-2(f), Income Tax Regs., creates an exception.  Under the single transaction theory, respondent determined that any outside basis derived from the options is limited to the net of the premiums paid for the long options and the premiums received for the short options.  This determination is an alternative means for denying the partners an increase in their outside bases for the premiums from the long options unreduced by the premiums from the short options. Petitioner characterizes this alternative determination as a concession by respondent.  Petitioner contends that netting the gain and loss from the options is proper under respondent's single transaction theory.  Petitioner argues that Highwood and the partners realized a net loss on the single integrated financial transaction and thus Highwood and the partners could not have omitted any income.

---

[7]Sec. 1.988-1(a)(11), Income Tax Regs., grants the Commissioner the authority to recharacterize a transaction or a series of transactions in whole or in part as a sec. 988 transaction if the effect of the transaction or the series of transactions is to avoid sec. 988.

Respondent's single integrated financial transaction determination is not a concession that netting is proper or that Highwood and the partners did not omit income from the short options. Rather, it is merely one of several alternative theories to support respondent's determination. By relying on one of respondent's numerous determinations in the FPAA, petitioner seeks to obtain integrated treatment of the long and short options for which it would not otherwise qualify. Section 1.988-2(f), Income Tax Regs., grants the Commissioner the right to integrate separate section 988 transactions for the purpose of preventing tax abuse. Taxpayers are entitled to integrate section 988 hedging transactions under section 988(d) and section 1.988-5, Income Tax Regs. Petitioner does not contend that Highwood or the partners qualify for this limited exception.[8]

We hold, assuming for purposes of petitioner's motion the fact of the legitimacy of the partnership and its transactions, that section 988 requires the partners to separately compute and report gain and loss from separate section 988 transactions, that the long and short options are separate section 988 transactions, and that Highwood and the partners' failure to separately compute

[8]Sec. 988(d) provides integrated treatment for sec. 988 hedging transactions entered into for the purpose of managing risk from currency fluctuations with respect to property or borrowings or obligations held or incurred by the taxpayer. Sec. 988(d)(2)(B) allows taxpayers to identify and integrate qualifying sec. 988 hedging transactions under a strict set of identification rules.

and report the gain from the short options is an omission from gross income under section 6501(e). We hold that Highwood omitted from gross income gain of $8,316,000 from the expiration of the short options by netting the gain and loss from the long and short options. The Adamses, the Fowlkeses, and the trust omitted gain from the expiration of the short options of $3,960,000, $2,475,000, and $1,881,000, respectively. These amounts constitute substantial omissions under section 6501(e). Because the partners omitted a specific income item the Code required them to report, petitioner's motion for summary judgment will be denied.

D.   Respondent's Determinations in the FPAA

Petitioner points out that the FPAA did not make a determination with respect to omitted income from the short options. Petitioner argues that respondent's determinations in the FPAA should limit the application of the 6-year period of limitations. Specifically, petitioner contends that respondent's omitted income argument directly contradicts the FPAA determination that the options should be disregarded in full. In the FPAA respondent determined that the long and short options should be disregarded and also disallowed the basis increases resulting from the contribution of the long options to the partnership. Petitioner argues that disregarded transactions produce no omission from gross income at the partnership level.

The issue for purposes of section 6501(e)(1) is whether there was an omission from gross income. Not all of respondent's determinations in the FPAA preclude the Court from considering whether the partners were required to separately compute and report the gain and loss from the long and short options under section 988 on the partnership return or whether the failure to do so is an omission from gross income under section 6501(e)(1). Therefore, petitioner's motion for summary judgment that the 3-year period of limitations applies must be denied for the reasons stated above. However, petitioner's contention concerning the inconsistency in respondent's arguments requires us to deny respondent's motion as well. Some of the alternative arguments asserted by respondent serve to keep the 6-year period of limitations on assessment open. However, it is not clear that the 6-year period would apply were respondent to argue, and convince this Court, that Highwood was a sham and that the FXDOTs lacked economic substance. Neither petitioner nor respondent have argued how the 6-year period of limitations on assessment would apply were we to ultimately decide this case by disregarding the FXDOTs as lacking economic substance. Neither party has pointed to any authority explaining how the 6-year period of limitations is affected if the reporting of a transaction at the partnership level is ultimately found to be lacking economic substance. We are not holding that the 6-year period of limitations would not

apply were we to uphold respondent's determinations on the theory that the transaction was a sham, only that we are not deciding that question in the context of respondent's motion for summary judgment.

Because neither party has cited any authority that would establish how the 6-year period would apply to all of the alternative arguments in the explanation of adjustments, we choose not to entertain the question of the proper application of section 6501(e) to each of respondent's distinct theories. We likewise do not consider arguments not yet addressed by the parties. Accordingly, respondent's motion for partial summary judgment will be denied.

E.   Adequate Disclosure

Although it was not specifically raised by petitioner in opposition to respondent's motion for partial summary judgment, we consider whether Highwood or the partners adequately disclosed the nature and amount of the gain from the short options. Section 6501(e)(1)(A)(ii) provides that any amount disclosed "in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item" shall not be considered omitted gross income.

Adequate disclosure is a factual question. Whitesell v. Commissioner, 90 T.C. 702, 707-708 (1988). Petitioner bears the burden of proving that the nature and amount of the omitted income

were adequately disclosed.  Univ. Country Club, Inc. v. Commissioner, 64 T.C. 460, 468 (1975).  Respondent accepts that the Court should consider the partners' individual returns as well as the returns of the passthrough entities--Highwood and the LLCs.[9]  See Hoffman v. Commissioner, 119 T.C. at 147; Robinson v. Commissioner, 117 T.C. 308, 317 (2001); Benson v. Commissioner, T.C. Memo. 2006-55, affd. 560 F.3d 1133 (9th Cir. 2009).

For a disclosure to be adequate, it "must be sufficiently detailed to alert the Commissioner and his agents as to the nature of the transaction so that the decision as to whether to select the return for audit may be a reasonably informed one."  Estate of Fry v. Commissioner, 88 T.C. 1020, 1023 (1987).  The disclosure must be more substantial than providing a clue that would intrigue the likes of Sherlock Holmes but need not recite every underlying fact.  Quick Trust v. Commissioner, 54 T.C. 1336, 1347 (1970), affd. 444 F.2d 90 (8th Cir. 1971).  The adequacy of a disclosure

---

[9]Respondent accepts as controlling caselaw applicable to tax years before the 1997 amendment to sec. 6501(a) that held that when an individual return contains references to a passthrough entity, the return of the passthrough entity is also considered to determine whether there was adequate disclosure of the omitted gross income.  The 1997 amendment to sec. 6501(a) added that "the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)."  Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1284, 111 Stat. 1038.  The 1997 amendment has been held not to have changed the law with respect to which returns are considered for purposes of adequate disclosure.  Salman Ranch, Ltd. v. United States, 79 Fed. Cl. 189 (2007), revd. on other grounds ____ F.3d ____ (Fed. Cir., July 30, 2009).

is judged by a reasonable person standard: whether the omitted gross income would be apparent from the face of the return to the "reasonable man". <u>Univ. Country Club, Inc. v. Commissioner</u>, <u>supra</u> at 471. The standard for adequate disclosure does not require the Commissioner to engage in a thorough examination of the return to ascertain whether there is omitted gross income. A misleading statement on a return is not sufficient to apprise the Commissioner of the nature and amount of an omitted item. <u>Estate of Fry v. Commissioner</u>, <u>supra</u> at 1023; <u>CC&F W. Operations Ltd. Pship. v. Commissioner</u>, T.C. Memo. 2000-286, affd. 273 F.3d 402 (1st Cir. 2001).

Highwood and the partners omitted gross income by their failure to separately state the gain from the expiration of the short options as section 988 requires. According to respondent, the partners engaged in a series of complicated transactions to artificially inflate their respective bases in their Heilig-Meyers and Modis stock to generate large noneconomic losses that they used to offset significant capital gains on the sale of their IXL stock. Respondent alleges that the partnership was created for the sole purpose of holding the options and the Heilig-Meyers and Modis stock so that the partners could claim artificially inflated bases for the redistributed stock.

The short options were an essential part of the partners' tax-avoidance scheme. The partners used the short options to

avoid payment of the large premiums on the long options and at the same time used the premiums from the long options to increase their outside bases in Highwood to justify Highwood's reporting contributions to it of over $8.5 million. However, Highwood did not disclose that the contributions primarily included the premiums for the long options or that the partners never paid the stated premiums for the long options for which they claimed increased outside bases because the partners paid only the net premiums from the long and short options.

In an attempt to disguise the purpose of the partnership and the option transactions, Highwood and the partners reported a net loss on the offsetting options rather than separately computing gain and loss for each section 988 transaction as required by section 988. Highwood and the partners netted the gain and loss from the long and short options to conceal the fact that the partners contributed both long and short options to the partnership and to conceal the fact that Highwood increased the partners' outside bases by the premiums on the long options unreduced by the premiums on the short options. Reporting the offsetting options as a net section 988 loss is misleading and is not adequate disclosure of the nature, amount, or existence of the gain from the short options to apprise respondent of the omitted gross income. Highwood's, Highwood's investors', and the partners' returns all failed to disclose that this loss resulted

from the expiration of the long and short options. There was no indication on the returns that the partners contributed either long or short options to Highwood or that the partners determined their outside bases by reference to the unpaid premiums from the long options.

Highwood and the partners used this deceptive reporting method to conceal how the partners calculated their bases for the Heilig-Meyers and Modis stock. The returns did not disclose that the partners contributed the Heilig-Meyers and Modis stock to Highwood or that Highwood redistributed the stock to the partners less than 2 months later to create a step-up in basis of $8.4 million. None of the returns disclosed that the claimed bases of the Heilig-Meyers and Modis stock were derived from the long options.

Highwood's return failed to mention the contributions of the short options or the gains realized upon their expiration. Highwood netted the gains and losses from the offsetting options to conceal the contributions of the options. A review of Highwood's, the Highwood investors', and the partners' returns did not reasonably allow respondent to identify the omitted gains. Accordingly, the safe harbor for adequate disclosure of omitted income under section 6501(e)(1)(A)(ii) does not apply.

To reflect the foregoing,

<u>An order will be issued denying petitioner's motion for summary judgment and denying respondent's cross-motion for partial summary judgment</u>.