128 T.C. No. 17

UNITED STATES TAX COURT

BAKERSFIELD ENERGY PARTNERS, LP, ROBERT SHORE, STEVEN FISHER,
GREGORY MILES AND SCOTT MCMILLAN, PARTNERS OTHER THAN THE TAX
MATTERS PARTNER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4204-06.                    Filed June 14, 2007.


     A Notice of Final Partnership Administrative
Adjustment (FPAA) for the year 1998 was sent in 2005,
determining that the basis of property sold by P was
overstated.  R contends that the overstatement of basis
is an omission of gross income and that, therefore, the
6-year period of limitations in sec. 6501(e)(1)(A),
I.R.C., applies.  There are no other exceptions to the
normal 3-year period of limitations applicable to the
individual partners.

     Held:  The overstatement of basis is not an
omission of gross income for purposes of sec.
6501(e)(1)(A), I.R.C.  Colony, Inc. v. Commissioner,
357 U.S. 28 (1958), followed.

Steven Ray Mather and Elliott Hugh Kajan, for petitioners.

Lloyd T. Silverzweig, for respondent.


OPINION


COHEN, Judge:  In a Notice of Final Partnership Administrative Adjustment (FPAA) sent October 4, 2005, respondent determined that Bakersfield Energy Partners, LP (BEP), had overstated its basis in certain gas reserves sold during the taxable year 1998, thus causing an understatement of partnership income by more than 25 percent of the amount stated in the return.  The issue for decision is whether, under those circumstances, the overstatement of basis constitutes an omission of income giving rise to an extended 6-year period of limitations.  This issue has been presented by petitioners' motion for summary judgment and respondent's motion for partial summary judgment.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

## Background

For purposes of the pending motions, the following facts have been assumed.  The petitioning partners are all partners in BEP.  BEP's principal place of business was in California at the time the petition was filed.  Prior to April 1, 1998, BEP owned an interest in an oil and gas property with Harcor, an unrelated

company.  After a proposed sale of the oil and gas property to another unrelated entity, Seneca Resources, fell through, the petitioning partners decided to restructure the ownership of BEP. To effect this new structure, on April 1, 1998, the petitioning partners sold their partnership interests in BEP to Bakersfield Resources, LLC (BRLLC), an entity that had been formed by the petitioning partners.

The petitioning partners recognized the gain from the sale of their BEP partnership interests under the installment method. For all tax years beginning in 1998, the petitioning partners have reported the gain from this sale under the installment method.

The sale of the petitioning partners' BEP partnership interests caused a termination of BEP's tax year pursuant to section 708.  BEP made an election under section 754 to adjust the basis of the partnership assets (the inside basis) to equal BRLLC's basis on its newly acquired BEP partnership interest (the outside basis) pursuant to section 743(b).  The section 754 election and the transaction resulting in the section 743(b) basis adjustments were disclosed in statements attached to BEP's partnership return for the short-year period from April 1 through December 31, 1998 (the 9812 Form 1065).

On the 9812 Form 1065, U.S. Partnership Return of Income, BEP reported total income as follows:

```
1 a  Gross receipts or sales
  b  Less returns and allowances
2    Cost of goods sold
3    Gross profit
4    Ordinary income (loss) from
      other partnerships . . . . . . . .    $273,262
5    Net farm profit (loss)
6    Net gain (loss) from Form 4797  . .   1,993,034
7    Other income (loss)
8    Total income (loss) . . . . . . . .   2,266,296
```

On Form 4797, Sales of Business Property, BEP reported sale of

the oil and gas properties in issue as follows:

```
20 Gross sales price . . . . . . . . . $23,898,611
21 Cost or other basis
    plus expense of sale . . . . . .   16,515,194
22 Depreciation (or depletion)
    allowed or allowable
23 Adjusted basis . . . . . . . . . .  16,515,194
24 Total gain . . . . . . . . . . . .   7,383,417
```

```
         *    *    *    *    *    *    *
```

```
28 If sec. 1254 property:
  a Intangible drilling and
    development costs, expenditures
    for development of mines and
    other natural deposits, and
    mining exploration costs . . . . 1,993,034
   b Enter the smaller of
      line 24 or 28a  . . . . . . . . 1,993,034
```

```
         *    *    *    *    *    *    *
```

```
30 Total gains for all properties . . 7,383,417
31 [From line 28] . . . . . . . . . . 1,993,034
32 Subtract line 31 from line 30  . . 5,390,383
```

Attached to BEP's 9812 Form 1065 was a Statement Regarding a

Partnership Technical Termination as follows:

> Pursuant to IRC Sec. 708(b)(1)(B) and the regulations
> thereunder, Bakersfield Energy Partners, LP terminated
> on April 1, 1998.  On that date, certain partners sold
> over a 50% ownership interest in the partnership's
> capital and profits to Bakersfield Resources, LLC

* * *.  On April 7, 1998, Bakersfield Resources, LLC acquired additional partnership interests through purchases.  These transactions resulted in a new partnership for federal income tax purposes (the "new" partnership retains the same federal employer identification number).

As reflected within the capital accounts, the partnership books were restated to reflect the value of the assets as required in the regulations under IRC 704.  As reflected within this return, in the event of a sale of these assets, proper adjustments have been made to reflect the tax basis and the proper taxable gain.

Also attached was a Section 754 Election Statement as follows:

The partnership hereby elects, pursuant to IRC Section 754, to adjust the basis of partnership property as a result of a distribution of property or a sale or exchange of a partnership interest as provided in IRC Sections 734(b) and 743(b).

The FPAA in this case was sent October 4, 2005.  The notice adjusted BEP's ordinary income as follows:

a.  Portfolio income (loss) interest

|     |               |         |
|-----|---------------|---------|
| (1) | Adjustment    | $0      |
| (2) | As reported   | 381,998 |
| (3) | Corrected     | 381,998 |

b.  Net gain (loss) under sec. 1231 not casualty/theft

|     |             |            |
|-----|-------------|------------|
| (1) | Adjustment  | 16,515,194 |
| (2) | As reported |  5,390,383 |
| (3) | Corrected   | 21,905,577 |

The adjustment was explained as follows:

Bakersfield Energy Partners, LP has failed to establish that it had a basis greater than $0 in the gas reserves it sold during the taxable year 1998.  It has been determined that any optional basis adjustment under section 743(b) was the result of a sham transaction, a transaction lacking economic substance that had no business purpose and no economic effect and/or was

availed for tax avoidance purpose and should not be respected for tax purposes.

Petitioners filed a motion for summary judgment on the ground that the FPAA was issued after the applicable period of limitations had expired. Petitioners contend that overstatement of basis is not an omission from gross income for purposes of the extended period of limitations under section 6501(e)(1)(A) or, in the alternative, that the amount omitted was "disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item." Sec. 6501(e)(1)(A)(ii). Respondent has moved for partial summary judgment, agreeing that the material facts necessary to determine whether the overstatement of basis is an omission from gross income are not in dispute. Respondent contends, however, that the question of adequate disclosure on the return involves a dispute as to material facts.

The parties have now stipulated facts as to each partner in the partnership, to the effect that they are unaware of any exception to the normal 3-year period of limitations on assessment other than the issue addressed in this Opinion.

<u>Discussion</u>

Under the general rule set forth in section 6501, the Internal Revenue Service is required to assess tax (or send a notice of deficiency) within 3 years after a Federal income tax return is filed. See sec. 6501(a). For this purpose, the

"return" does not include a return of a person, such as a partnership, from whom the taxpayer (i.e., a partner) has received an item of income, gain, loss, deduction, or credit. Id. In the case of a tax imposed on partnership items, section 6229 sets forth special rules to extend the period of limitations prescribed by section 6501 with respect to partnership items or affected items. See sec. 6501(n)(2); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 540-543 (2000).

Section 6229 provides in pertinent part:

SEC. 6229.  PERIOD OF LIMITATIONS FOR MAKING
            ASSESSMENTS.

    (a) General Rule.--Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of--

        (1) the date on which the partnership return for such taxable year was filed, or

        (2) the last day for filing such return for such year (determined without regard to extensions).

            *    *    *    *    *    *    *

    (c) Special Rule in Case of Fraud, Etc.--

            *    *    *    *    *    *    *

        (2) Substantial omission of income.--If any partnership omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in its return, subsection (a) shall be applied by substituting "6 years" for "3 years".

In drafting section 6229, Congress did not create a completely separate statute of limitations for assessments attributable to partnership items.  See AD Global Fund, LLC v. United States, 481 F.2d 1351 (Fed. Cir. 2007); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, supra at 545.  Instead, section 6229 merely supplements section 6501.

In Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, supra at 539, the Court analyzed sections 6229 and 6501 as applicable to an FPAA.  The Court stated in pertinent part:

> The Internal Revenue Code prescribes no period during which TEFRA partnership-level proceedings, which begin with the mailing of the notice of final partnership administrative adjustment, must be commenced.  However, if partnership-level proceedings are commenced after the time for assessing tax against the partners has expired, the proceedings will be of no avail because the expiration of the period for assessing tax against the partners, if properly raised, will bar any assessments attributable to partnership items.  [Id. at 534-535.]
>
> *       *       *       *       *       *       *
>
>      * * *  Any income tax attributable to partnership items is assessed at the partner level.  Thus, any statute of limitations provisions that limit the time period within which assessment can be made are restrictions on the assessment of a partner's tax.  [Id. at 539.]

See AD Global Fund, LLC v. United States, 481 F.2d 1351 (Fed. Cir. 2007); G-5 Inv. Pship. v. Commissioner, 128 T.C. ___ (May 30, 2007).

If respondent's position in this proceeding is correct, the FPAA was sent within the 6-year period of limitations, and the FPAA, by reason of section 6229(d), would suspend the period of limitations applicable to assessment of the liabilities of the partners. If we adopt petitioners' position in this case, the applicability of the period of limitations requires analysis of the situation of each partner, i.e., whether the partner's tax year is open to assessment. If the period of limitations is open with respect to any partner in the partnership, the adjustments made in the FPAA in issue would have to be examined on the merits. However, the parties have stipulated that they know of no other exceptions to the normal 3-year period with respect to the individual partners, and respondent has conceded that, if the Court determines that petitioners' failure to include net gain from the sale of property does not constitute an omission from gross income, the Court should grant petitioners' motion for summary judgment.

Although section 6229 does not repeat all of the terms and provisions already set forth in section 6501, the precedents interpreting section 6501(e)(1)(A)(ii) have been held equally applicable to section 6229(c)(2), and that principle is not disputed here. In this case, however, respondent implies that an interpretation under the Internal Revenue Code of 1939 should not apply to the current Code provisions.

In <u>Colony, Inc. v. Commissioner</u>, 357 U.S. 28, 37 (1958), the Supreme Court, interpreting section 275(c), I.R.C. 1939, the predecessor of section 6501(e), specifically stated that the result that it reached is in harmony with the language of section 6501(e)(1)(A):

> We think that in enacting section 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years [now three] to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage. * * * [<u>Id.</u> at 36.]

The precise holding of the Supreme Court in <u>Colony, Inc. v. Commissioner</u>, <u>supra</u>, was that the extended period of limitations applies to situations where specific income receipts have been "left out" in the computation of gross income and not when an understatement of gross income resulted from an overstatement of basis. The Supreme Court stated:

> In determining the correct interpretation of sec. 275(c) [now sec. 6501(e)] we start with the critical statutory language, "omits from gross income an amount properly includible therein." The Commissioner states that the draftsman's use of the word "amount" (instead of, for example, "item") suggests a concentration on the quantitative aspect of the error--that is, whether or not gross income was understated by as much as 25%. This view is somewhat reinforced if, in reading the above-quoted phrase, one touches lightly on the word "omits" and bears down hard on the words "gross income," for where a cost item is overstated, as in the case before us, gross income is affected to the same

> degree as when a gross-receipt item of the same amount is completely omitted from a tax return.
>
> On the other hand, the taxpayer contends that the Commissioner's reading fails to take full account of the word "omits," which Congress selected when it could have chosen another verb such as "reduces" or "understates," either of which would have pointed significantly in the Commissioner's direction. The taxpayer also points out that normally "statutory words are presumed to be used in their ordinary and usual sense, and with the meaning commonly attributable to them." De Ganay v. Lederer, 250 U.S. 376, 381. "Omit" is defined in Webster's New International Dictionary (2d ed. 1939) as "To leave out or unmentioned; not to insert, include, or name," and the Court of Appeals for the Sixth Circuit has elsewhere similarly defined the word. Ewald v. Commissioner, 141 F.2d 750, 753. Relying on this definition, the taxpayer says that the statute is limited to situations in which specific receipts or accruals of income items are left out of the computation of gross income. For reasons stated below we agree with the taxpayer's position. [Id. at 32-33.]

Although the numbering of the sections as part of recodifications of the Internal Revenue Code has changed, we see little change in the rationale of the applicable statute. Thus, the Supreme Court holding would apply equally to BEP's return.

Respondent's memorandum brief in support of motion for partial summary judgment maintains that BEP:

> properly reported the gross sales price of $23,898,611 on the Form 4797, but that it only reported $5,390,383 of the related net gain under I.R.C. sec. 1231 (understating the net gain by $16,515,194). * * * On its return for the 1998 Taxable Year, * * * [BEP] reported gross income totaling $8,038,677, including the reported net I.R.C. sec. 1231 gain of $5,390,383, portfolio (interest) income of $381,998, and trade or business income of $2,266,296. * * * Therefore, the amount of gross income omitted by * * * [BEP] which was properly includible therein (i.e. $16,515,194) exceeded

the amount of income stated in the return (<u>i.e.</u> $8,038,677) by 205 percent.

Respondent argues:

> Overstating deductions is not considered an omission of gross income for purposes of I.R.C. secs. 6229(c)(2) and 6501(e)(1)(A).  However, overstating the basis resulting in underreporting net I.R.C. sec. 1231 gain is not considered overstating deductions.  Rather, the underreporting (or omitting) of I.R.C. sec. 1231 gain is the omission of gross income regardless of whether the gross sales price is underreported (or omitted) or the basis is overstated.  The relevant issue is not whether an income item was completely omitted from the return, but <u>whether, for purposes of I.R.C. secs. 6229(c)(2) and 6501(e)(1)(A), gross income is omitted when a taxpayer underreports the gain from the sale of property used in a trade or business as the result of overstating the cost or other basis of such property</u>.  [Emphasis added.]

Respondent relies on cases defining "gross income" for general purposes of section 6501(e) by reference to section 61.

Respondent cites section 6501(e)(1)(A)(i), which defines gross income in the context of sale of goods or services, and argues:

> Any uncertainty in analyzing the sales of business property under I.R.C. sec. 6501(e)(1)(A) results only from trying to apply statements in <u>Colony, Inc. v. Commissioner</u>, 357 U.S. 28 (1958), concerning the extended period for omissions in the I.R.C. of 1939 to the revised provision of the I.R.C., and from taking statements about equating gross receipts with gross income in the case of a trade or business out of context.  * * *

Respondent continues:

> In <u>Colony, Inc.</u>, the taxpayer understated the gross profits on the sales of certain lots of land for residential purposes as a result of having overstated the basis of such lots by erroneously including in their cost certain unallowable items of development expense.  <u>Colony, Inc.</u>, 357 U.S. at 30.  Respondent acknowledges that <u>Colony, Inc.</u> suggests that an

overstated basis, in contrast to the omission of sales proceeds, provides something for the Service to check.4/ However, in Colony, Inc., the Supreme Court had before it a case of a sale of goods or services, as the taxpayer's principal business was the development and sale of lots in a subdivision. See Colony, Inc. v. Commissioner, 26 T.C. 30, 31 (1956), aff'd, 244 F.2d 75 (6th Cir. 1957), rev'd, 357 U.S. 28 (1958). In cases not concerning a sale of goods or services, Colony, Inc.'s approach would conflict with I.R.C. sec. 6501(e)(1)(A). See CC&F Western Operations L.P., 273 F.3d at 406, in which the First Circuit questions whether Colony's main holding carries over from the 1939 Internal Revenue Code for land sales in general ("Gross income on land sales is normally computed as net gain after subtracting basis. 26 U.S.C. secs. 61(a)(3), 1001(a); 26 C.F.R. sec. 1.61-6 (2001).").

Accordingly, respondent maintains that Colony, Inc. does not provide any authority for treating gross receipt as gross income for the sale of land or other property; rather, under the current I.R.C., that treatment depends on whether the property sold is a good or service. The sale of business property reported on Form 4797 is not the sale of a good or service; rather it is the sale of an item that is used by a business to sell goods or services.

_____

4 Petitioner notes that although the Supreme Court applied the 1939 I.R.C., it stated "that the conclusion is in harmony with the unambiguous language of sec. 6501(e)(1)(A)." Colony, Inc., 357 U.S. at 37. The Supreme Court did not purport to explain how an interpretation under the I.R.C. 1954 should incorporate its analysis. It appears that this observation was only made because each party had looked to the I.R.C. 1954 Code for support as indicated by the following phrase which prefaces the observation: "And without doing more than noting the speculative debate between the parties as to whether Congress manifested an intention to clarify or to change the 1939 Code, * * *." Colony, Inc., 357 U.S. at 37.

We are unpersuaded by respondent's attempt to distinguish

and diminish the Supreme Court's holding in Colony, Inc. v.

Commissioner, 357 U.S. 28 (1958). We do not believe that either

the language or the rationale of <u>Colony, Inc.</u> can be limited to the sale of goods or services by a trade or business.  As petitioners point out, the Supreme Court held that "omits" means something "left out" and not something put in and overstated.

We apply the holding of <u>Colony, Inc. v. Commissioner</u>, <u>supra</u>, to this case and conclude that the 6-year period of limitations set forth in section 6501(e) does not apply.  Thus, we need not determine whether the amounts in dispute were disclosed on the return in a manner adequate to apprise the Secretary of the nature and amount of the omitted item.

Because of the stipulation that no other exception to the normal 3-year period applies to any of the individual partners and to reflect the foregoing,

<u>An order and decision will be entered granting petitioners' motion for summary judgment and denying respondent's motion for partial summary judgment</u>.