SUPPLEMENTAL OPINION Wherry, Judge: We issued an opinion and entered our decision in this case on September 1, 2009. Relying on Bakersfield Energy Partners, LP v. Commissioner, 128 T.C. 207 (2007), affd. 568 F.3d 767 (9th Cir. 2009), we decided that the adjustments made in respondent’s final partnership administrative adjustment (fpaa) on which this case is based are barred by the general 3-year period of limitations in section 6501(a).[1] See Intermountain Ins. Serv. of Vail, LLC v. Commissioner, T.C. Memo. 2009-195. Respondent subsequently issued two temporary regulations, sections 301.6229(c)(2)-1T and 301.6501(e)-1T, Temporary Proced. & Admin. Regs., 74 Fed. Reg. 49322-49323 (Sept. 28, 2009), and on the basis of the application of those temporary regulations to this case, filed motions to vacate our decision and to reconsider our opinion.[2] The sole issue now before the Court is whether the temporary regulations compel us to grant respondent’s motions. Background The transactions at the heart of this case took place in 1999 and were reported on the 1999 Form 1065, U.S. Partnership Return of Income, of Intermountain Insurance Service of Vail, LLC (Intermountain), filed on September 15, 2000. The details of the transactions are largely irrelevant to the issues we face today. Suffice it to say that in the previously mentioned FPAA that respondent issued on September 14, 2006, respondent determined that the transactions characterized as a tax shelter “were a sham, lacked economic substance and * * * [had] a principal purpose of * * * [reducing] substantially the present value of * * * [Inter-mountain’s] partners’ aggregate federal tax liability”. Critically, respondent’s determination revolved around Inter-mountain’s alleged overstatement of partnership basis. Petitioner timely petitioned this Court for review of the FPAA and moved for summary judgment on the ground that respondent had issued the FPAA beyond the general 3-year period of limitations for assessing tax against Intermoun-tain’s partners. See secs. 6229(a), 6501(a). Respondent conceded that the 3-year limitations period had expired but argued that an extended 6-year period of limitations applied instead as a result of Intermountain’s basis overstatement.[3] See secs. 6229(c)(2), 6501(e)(1)(A). A dispute over the proper interpretation of sections 6229(c)(2) and 6501(e)(1)(A) ensued. Generally, a 6-year limitations period is triggered when a taxpayer or partnership “omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return”. Sec. 6501(e)(1)(A) (taxpayer); see sec. 6229(c)(2) (partnership). The focus of the parties’ dispute was whether an overstatement of basis constitutes an omission from gross income for purposes of triggering a 6-year limitations period. This was not an issue of first impression. In Bakersfield Energy Partners, LP v. Commissioner, supra, we held that a basis overstatement was not an omission from gross income for purposes of sections 6229(c)(2) and 6501(e)(1)(A). In reaching our conclusion, we applied the holding of Colony, Inc. v. Commissioner, 357 U.S. 28, 33 (1958), in which the Supreme Court was faced with identical language in section 6501(e)(1)(A)’s predecessor — section 275(c) of the Internal Revenue Code of 1939. See Bakersfield Energy Partners, LP v. Commissioner, supra at 215 (“We are unpersuaded by respondent’s attempt to distinguish and diminish the Supreme Court’s holding in Colony, Inc. v. Commissioner”). The Supreme Court’s holding, as we described it, was “that the extended period of limitations applies to situations where specific income receipts have been left out’ in the computation of gross income and not when an understatement of gross income resulted from an overstatement of basis.” Id. at 213. The Supreme Court had reviewed the statute’s legislative history and determined that Congress had not intended a basis overstatement to be an omission from gross income. See Colony, Inc. v. Commissioner, supra at 33, 36. We adhered to our precedent in Bakersfield Energy Partners, LP v. Commissioner, supra, when we issued our September 1, 2009, opinion in this case. See Intermountain Ins. Serv. of Vail, LLC v. Commissioner, T.C. Memo. 2009-195. Accordingly, in our September 1, 2009, order and decision, we granted petitioner’s motion for summary judgment and decided that the adjustments in respondent’s FPAA were barred by the general 3-year limitations period. That was not the end of the matter, however. On September 24, 2009, less than a month after our order and decision in this case, respondent and the Treasury Department issued temporary regulations under sections 6229(c)(2) and 6501(e)(1)(A). See secs. 301.6229(c)(2)-lT and 301.6501(e)-lT, Temporary Proced. & Admin. Regs., supra. These temporary regulations were simultaneously issued as proposed regulations. See sec. 7805(e). On September 28, 2009, notice was published and comments were sought for sections 301.6229(c)(2)-l and 301.6501(e)-l, Proposed Proced. & Admin. Regs., see Notice of Proposed Rulemaking by Cross-Reference to Temporary Regulations, 74 Fed. Reg. 49354 (Sept. 28, 2009), and the temporary regulations were published in the Federal Register, see secs. 301.6229(c)(2)-lT and 301.6501(e)-lT, Temporary Proced. & Admin. Regs., supra. The temporary regulations provide, in pertinent part, that “an understated amount of gross income resulting from an overstatement of unrecovered cost or other basis constitutes an omission from gross income for purposes of * * * [sections 6229(c)(2) and 6501(e)(1)(A)].” See secs. 301.6229(c)(2)-1T and 301.6501(e)-1T, Temporary Proced. & Admin. Regs., supra. The interpretation espoused by the temporary regulations runs contrary to the interpretation adopted by this Court in Bakersfield Energy Partners, LP v. Commissioner, 128 T.C. 207 (2007), and by the Courts of Appeals for the Ninth and Federal Circuits in Bakersfield Energy Partners, LP v. Commissioner, 568 F.3d 767 (9th Cir. 2009),[4] and Salman Ranch Ltd. v. United States, 573 F.3d 1362 (Fed. Cir. 2009), respectively. See T.D. 9466, 2009-43 I.R.B. 551, 552 (“The Treasury Department and the Internal Revenue Service disagree with these courts that the Supreme Court’s reading of the predecessor to section 6501(e) in Colony applies to sections 6501(e)(1)(A) and 6229(c)(2).”). Bolstered by the temporary regulations, respondent, on October 16, 2009, lodged — and on November 25, 2009, was permitted to file — an otherwise late motion to vacate our September 1, 2009, decision and a motion to reconsider our September 1, 2009, opinion. As the moving party, respondent bears the burden of proving entitlement to relief. See Kraasch v. Commissioner, 70 T.C. 623, 626 (1978). Respondent urges us to reconsider the case, this time eschewing our prior precedent in favor of the temporary regulations. Petitioner counters that the temporary regulations are either inapplicable, invalid, or otherwise not entitled to deference. On November 25, 2009, we ordered the parties to file briefs. Pursuant to our order, the parties filed opening briefs on January 5, 2010. Petitioner and respondent filed reply briefs on January 27 and February 1, 2010, respectively. Discussion I. Motions To Reconsider and To Vacate Motions to reconsider and to vacate are governed by Rules 161 and 162, respectively. Those rules establish filing deadlines but provide no guidance on when the Court should grant or deny such motions. In the absence of more specific guidance, we look to caselaw and the Federal Rules of Civil Procedure. See Rule 1(b). The decision to grant motions to reconsider and to vacate lies within the discretion of the Court. Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998) (motion to reconsider); Kun v. Commissioner, T.C. Memo. 2004-273 (motion to vacate). Motions to reconsider are generally “intended to correct substantial errors of fact or law and allow the introduction of newly discovered evidence that the moving party could not have introduced by the exercise of due diligence in the prior proceeding.” Knudsen v. Commissioner, 131 T.C. 185, 185 (2008). “Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or tendering new legal theories to reach the end result desired by the moving party.” Estate of Quick v. Commissioner, supra at 441—442. Motions to vacate are generally not granted absent a showing of unusual circumstances or substantial error, e.g., mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or other reason justifying relief. See, e.g., Fed. R. Civ. P. 60(b); Brannon’s of Shawnee, Inc. v. Commissioner, 69 T.C. 999 (1978). Importantly, an intervening change in the law can warrant the granting of both a motion to reconsider and a motion to vacate. See Alioto v. Commissioner, T.C. Memo. 2008-185.[5] In Alioto v. Commissioner, T.C. Memo. 2006-199, the Court held that it lacked jurisdiction over “stand-alone” section 6015(f) cases. After Congress expanded the Court’s jurisdiction to include such cases, see Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408, 120 Stat. 3061, the taxpayer filed timely motions to reconsider and to vacate, which the Court granted. See Alioto v. Commissioner, T.C. Memo. 2008-185 (“We agree that the Court correctly applied the caselaw as it existed at the time the Court issued Alioto I; however, we disagree that the motion for reconsideration should be denied. After the Court’s decision in Alioto I the law and the Court’s jurisdiction changed.” (Fn. ref. omitted.)). Respondent asks us to grant the motion to vacate in the “interests of justice” so that we “may grant the motion for reconsideration.” Citing Alioto v. Commissioner, T.C. Memo. 2008-185, respondent further asserts that the issuance of the temporary regulations was an “unusual circumstance” warranting reconsideration of our September 1, 2009, opinion. Petitioner disagrees and attempts to distinguish Alioto v. Commissioner, T.C. Memo. 2008-185, noting that it involved “an act of [Cjongress * * *, not a regulation issued by Respondent, who was a litigant in the case.” Along these lines, petitioner warns that “Granting Respondent’s Motion under the circumstances of this case would give Respondent license to render litigation futile” because “In every case where * * * [respondent] receives an adverse decision, Respondent could simply restate its [sic] unsuccessful argument as a temporary regulation, and then request reconsideration based upon the temporary regulation.” Petitioner’s concerns are noteworthy;[6] however, they do not persuade us to deny respondent’s motions without first considering the applicability and potential impact of the temporary regulations. Ignoring the temporary regulations at this time would not dispel the evils envisioned by petitioner. Indeed, respondent could appeal our September 1, 2009, decision and ask the appellate court to consider the issue of the temporary regulations in the first instance. Respondent has already done so in more than one case.[7] By neglecting the temporary regulations at this time we would not be protecting the integrity of the judicial system, as petitioner suggests, but merely failing to fully complete our work. We see no compelling reason to wield our discretion to that end. Moreover, we question petitioner’s attempt to distinguish Alioto v. Commissioner, T.C. Memo. 2008-185, in this context. [8] Accordingly, we proceed to consider the applicability and potential impact of the temporary regulations to this case. If, as petitioner contends, the temporary regulations do not apply, are invalid, or are otherwise not entitled to deference, we will deny respondent’s motions because it would be pointless to grant them. If, on the other hand, the temporary regulations apply, are valid, and are entitled to deference, we would be required to ascertain whether, after considering all other factors, respondent’s motions should be granted. We turn first to whether the temporary regulations apply to this case. II. The Applicability of the Temporary Regulations The threshold issue in determining whether the temporary regulations apply to this case is whether the temporary regulations apply by their own terms. The “Effective/applicability date” provisions of the temporary regulations provide that “The rules of this section apply to taxable years with respect to which the applicable period for assessing tax did not expire before September 24, 2009.” Secs. 301.6229(c)(2)-lT(b) and 301.6501(e)-lT(b), Temporary Proced. & Admin. Regs., supra. The starting point for interpreting a regulatory provision is its plain meaning. See Walker Stone Co. v. Secy. of Labor, 156 F.3d 1076, 1080 (10th Cir. 1998) (“When the meaning of a regulatory provision is clear on its face, the regulation must be enforced in accordance with its plain meaning.”). We concluded in our September 1, 2009, opinion that the general 3-year limitations period of section 6501(a) was the applicable period for assessing tax in this case and that it had expired some time before September 14, 2006. The plain meaning of the effective/applicability date provisions indicates that the temporary regulations do not apply to this case. Respondent argues to the contrary and in doing so begs the question[9] by advancing a notably convoluted interpretation of the effective/applicability date provisions: To determine whether the temporary regulations are applicable under the effective date provision, the Court must determine whether a six-year statute of limitations would be open for the taxable year at issue, as of September 24, 2009, without regard to what the standard for applying the statute of limitations might be. If the six-year limitations period could be open under some standard as of September 24, 2009, then the temporary regulations apply. Under respondent’s interpretation, the Court must depart from our precedent in Bakersfield Energy Partners, LP v. Commissioner, 128 T.C. 207 (2007), affd. 568 F.3d 767 (9th Cir. 2009), which held that a 3-year limitations period applies under the circumstances of this case. We must then launch a quest for some hypothetical standard that could trigger a 6-year limitations period. If we discover such a standard — and the temporary regulations conveniently supply us with one — then we must apply that standard to determine whether the period of limitations in this case could have been open as of September 24, 2009. If the limitations period could have been open under the hypothetical standard, then the temporary regulations apply to this case. Essentially, the key, according to respondent, is not whether the limitations period was actually open on September 24, 2009, under then-applicable law but whether the limitations period could have been open on that date under hypothetical law. Distilled even further, respondent’s rationale suggests that the temporary regulations apply to this case because their application would trigger a 6-year limitations period. Respondent had phrased this argument more simply in his motion to reconsider: “The temporary regulations apply to petitioner’s 1999 tax year, because the period of limitations under sections 6229(c)(2) and 6501(e)(1)(A), as interpretated, in the regulations, remains open with respect to that year.” (Emphasis added.)[10] Ordinarily, an agency’s interpretation of its own regulation is controlling unless it is “plainly erroneous or inconsistent with the regulation.” Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal quotation marks omitted).[11] Here, however, the Court concludes that respondent’s interpretation of the temporary regulations’ effective/applicability date provisions is erroneous and inconsistent with the regulations. Specifically, we find the interpretation to be irreparably marred by circular, result-driven logic and the wishful notion that the temporary regulations should apply to this case because Intermountain was involved in what he believes was an abusive tax transaction. For these reasons, we refuse to accord respondent’s interpretation deferential treatment. The plain meaning of the temporary regulations’ effective/ applicability date provisions indicates that the temporary regulations do not apply to this case because the applicable period of limitations expired before September 24, 2009.[12] It would therefore be futile to grant respondent’s motions to reconsider and to vacate, both of which are premised on the application of the temporary regulations to this case. While the foregoing establishes a plausible ground to rule against respondent’s motions, it becomes compelling when combined with our discussion below.[13] III. Judicial Deference We next turn to whether the temporary regulations, if applicable, deserve judicial deference. Courts have long held that Federal tax regulations are entitled to some degree of deference. This is in recognition of the fact that “Congress has delegated to the [Secretary of the Treasury and his delegate, the] Commissioner [of Internal Revenue], not to the courts, the task of prescribing all needful rules and regulations for the enforcement of the Internal Revenue Code.” Natl. Muffler Dealers Association, Inc. v. United States, 440 U.S. 472, 477 (1979) (internal quotation marks omitted). Yet, the exact amount of deference owed to Federal tax regulations remains a source of debate. Petitioner asserts that the temporary regulations are only entitled to deference under Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), because they are interpretive regulations. Respondent counters that the more deferential standard in Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-843 (1984), applies and that, if not, then the temporary regulations at least fall under Natl. Muffler Dealers Association, Inc. We need not resolve the parties’ dispute on this issue because, even if the temporary regulations are entitled to review under Chevron, they face a formidable obstacle to deference—Colony, Inc. v. Commissioner, 357 U.S. 28 (1958).[14] The temporary regulations were not issued on a blank slate. In its 1958 opinion in Colony, Inc., the Supreme Court interpreted the same statutory language and held that a basis overstatement was not an omission from gross income. Id. More than 50 years later, respondent and the Treasury Department issued the temporary regulations and reached the opposite conclusion. The question is whether we are bound by the agency’s construction of the statute in the temporary regulations or by the Supreme Court’s prior determination of congressional intent and the Internal Revenue Code’s requirements, as set forth in Colony, Inc. Assuming respondent is correct that the temporary regulations are entitled to Chevron deference, the answer to this question lies in Natl. Cable & Telecomms. Association v. Brand X Internet Servs., 545 U.S. 967, 982 (2005). “A court’s prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.” Id. In so holding, the Supreme Court reasoned as follows: [Allowing a judicial precedent to foreclose an agency from interpreting an ambiguous statute * * * would allow a court’s interpretation to override an agency’s. Chevron’s premise is that it is for agencies, not courts, to fill statutory gaps. * * * The better rule is to hold judicial interpretations contained in precedents to the same demanding Chevron step one standard that applies if the court is reviewing the agency’s construction on a blank slate: Only a judicial precedent holding that the statute unambiguously forecloses the agency’s interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction. [Id. at 982-983.[15]] We are therefore directed to apply Chevron step one by determining whether the Supreme Court in Colony, Inc. v. Commissioner, supra, found the statutory provision at issue to be unambiguous. If so, there is no gap left for the temporary regulations to fill with respect to the statutory provisions at issue here. The first step in Chevron’s two-step analysis is to ask “whether Congress has directly spoken to the precise question at issue.” Chevron U.S.A. Inc. v. Natural Res. Def. Council, supra at 842. “If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.”[16] Id. at 842-843. When determining Congress’ intent, Chevron instructs us to employ “traditional tools of statutory construction.” Id. at 843 n.9. Many courts, including the Courts of Appeals to which this case might be appealed,[17] have accepted the use of legislative history as an important element in Chevron step one. See, e.g., Anderson v. U.S. Dept. of Labor, 422 F.3d 1155, 1180 (10th Cir. 2005) (“To determine whether Congress had an intent on the precise question at issue, courts utilize the traditional tools of statutory construction, including the statutory language and legislative history.”).[18] Therefore, in determining whether the Supreme Court in Colony, Inc. v. Commissioner, 357 U.S. 28 (1958), found the statutory provision at issue to be unambiguous, we will consider the Court’s analysis of both the statutory language and its legislative history.[19] Respondent calls attention to the Supreme Court’s statement that “Although we are inclined to think that the statute on its face lends itself more plausibly to the taxpayer’s interpretation, it cannot be said that the language is unambiguous.”[20] Colony, Inc. v. Commissioner, supra at 33. In doing so, respondent ignores the Supreme Court’s subsequent review of, and reliance on, the statute’s legislative history. Although the Supreme Court initially found the statutory provision ambiguous, that was only a preliminary conclusion before considering the statute’s legislative history. After thoroughly reviewing the legislative history,[21] the Supreme Court concluded that Congress’ intent was clear and that the statutory provision was unambiguous. Id. at 33, 36. Specifically, the Supreme Court found the legislative history to be “persuasive evidence that Congress was addressing itself to the specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes.” Id. at 33 (emphasis added). It further indicated that “this history shows to our satisfaction that the Congress intended an exception to the usual three-year statute of limitations only in the restricted type of situation already described [an omission of an item of gross income].” Id. at 36. “We think that in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer’s omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors.” Id. In so holding, the Supreme Court found that the statute’s legislative history clarified its otherwise ambiguous text and, as a result, explicated Congress’ intent and the meaning of the statutory provision. Thus, the Supreme Court’s opinion in Colony, Inc. v. Commissioner, supra, “unambiguously forecloses the agency’s interpretation” of sections 6229(c)(2) and 6501(e)(1)(A) and displaces respondent’s temporary regulations. [22] See Natl. Cable & Telecomms. Association v. Brand X Internet Servs., supra at 983. Consequently, the temporary regulations[23] are invalid and are not entitled to deferential treatment.[24] IV. Retroactivity We next turn to petitioner’s concern that the temporary regulations would have an impermissible retroactive effect if we applied them in this case. Respondent attempts to defuse petitioner’s concern by arguing that the temporary regulations “are not retroactive as applied in this case” but that, even if they were, they would be permissibly retroactive. Thus, two issues emerge: First, whether the temporary regulations would have a retroactive effect if applied in this case, and second, if so, whether the retroactive effect would be permissible. However, in the light of our holdings above regarding the regulations’ effective date and their validity, we need not answer these questions to resolve respondent’s motions in this case. We therefore leave them for another day. Conclusion In the light of the above holdings, we find it unnecessary to address petitioner’s other concerns with respect to the temporary regulations. The Court has considered all of respondent’s contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant. To reflect the foregoing, An appropriate order will be issued. Reviewed by the Court. Colvin, Wells, Vasquez, Goeke, Kroupa, and Paris, JJ., agree with this majority opinion. GUSTAFSON and Morrison, JJ., did not participate in the consideration of this opinion. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. In our Sept. 1, 2009, opinion, we noted that, although respondent argued that sec. 6501(e)(1)(A) applied, his arguments suggested that he meant to cite sec. 6229(c)(2) instead. See Intermountain Ins. Serv. of Vail, LLC v. Commissioner, supra n.3. Sec. 6501(e)(1)(A) extends the 3-year period of limitations for assessing tax to 6 years from the due date or the date of the tax return, whichever is later. See sec. 6501(a). For tax attributable to a partnership item, the period of limitations remains open at least for 3 years after the date the partnership return was filed or 3 years after the last day, disregarding extensions, for filing the partnership return, whichever is later. See sec. 6229(a). Sec. 6229(c)(2) extends the sec. 6229(a) period. Although there is no period of limitations within which the Commissioner must issue an FPAA, partnership item adjustments made in an FPAA are time barred at the partner level if the FPAA is not issued within the applicable period of limitations for assessing tax against a partner attributable to partnership items. See generally Curr-Spec Partners, L.P. v. Commissioner, 579 F.3d 391 (5th Cir. 2009), affg. T.C. Memo. 2007-289; Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 534-535, 542 (2000). Respondent has not provided support for his argument that sec. 6501(e)(1)(A) or sec. 301.6501(e)-1T, Temporary Proced. & Admin. Regs., 74 Fed. Reg. 49322-49323 (Sept. 28, 2009), applies to this case. Respondent has only addressed an omission from Intermountain’s partnership return and time periods running from the filing of that return. Nevertheless, the parties refer to the temporary regulations in tandem. Respondent states in his motion to reconsider that “The temporary regulations apply to petitioner’s 1999 tax year”. For the purposes of this Opinion, and because sec. 6501(e)(1)(A) and sec. 301.6501(e)-1T, Temporary Proced. & Admin. Regs., supra, could affect the outcome of this case if a partner’s period of limitations was still open when the FPAA was issued, we will follow the parties’ lead and refer to the temporary regulations in tandem. The bar of the period of limitations is an affirmative defense, and petitioner bore the burden of proof. See Rules 39, 142(a); see also Highwood Partners v. Commissioner, 133 T.C. 1, 9 (2009). Petitioner established a prima facie case that the general 3-year period of limitations had expired as of the date the PPAA was issued in this case, and respondent conceded as much. Accordingly, and because respondent never suggested any other reason why the period of limitations with respect to any partner remained open, the burden of going forward shifted to respondent to establish that there was a greater-than-25-percent omission of gross income on a partner’s or the partnership’s return. See Highwood Partners v. Commissioner, supra at 9; see also Intermountain Ins. Serv. of Vail v. Commissioner, LLC, supra n.2. According to T.D. 9466, 2009-43 I.R.B. 551, 552, the temporary regulations are consistent with a suggestion by the U.S. Court of Appeals for the Ninth Circuit in Bakersfield Energy Partners, LP v. Commissioner, 568 F.3d 767, 778 (9th Cir. 2009), affg. 128 T.C. 207 (2007), that ambiguity in the statutory language may make the statutes susceptible to reinterpretation through regulations. We address this infra note 24. See also Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000); Cornell v. Nix, 119 F.3d 1329, 1332-1333 (8th Cir. 1997); Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986); McGrath v. Potash, 199 F.2d 166, 167 (D.C. Cir. 1952). Tax litigation is expensive, and respondent litigates with taxpayer-provided funds while petitioner and/or the limited liability company or its members must litigate with their own funds. If the law is allowed to change retroactively after a taxpayer has prevailed in one or more courts, thereby rendering their victory Pyrrhic, the perverse result will be to significantly discourage taxpayers from asserting their rights under the then-existing law. See Brief for the Appellant at 14, Salman Ranch, Ltd. v. Commissioner, No. 09-9015 (10th Cir., Feb. 16, 2010); Brief for the Petitioner at 17-18, Commissioner v. M.I.T.A., No. 09-60827 (5th Cir., Mar. 3, 2010). See, e.g., Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 744 n.3 (1996), which we cited in our Nov. 25, 2009, order in this case granting respondent’s Oct. 16, 2009, motions for leave to file out of time the motions to reconsider and to vacate. See IRS Chief Counsel Notice CC — 2010-001 (Nov. 23, 2009) stating: The temporary regulations apply to taxable years with respect to which the applicable period of limitations for assessing tax did not expire before September 24, 2009. Accordingly, the temporary regulations apply to any docketed Tax Court case in which the period of limitations under sections 6229(c)(2) and 6501(e)(1)(A), as interpreted in the temporary regulations, did not expire with respect to the tax year at issue, before September 24, 2009, and in which no final decision has been entered. See supra note 9. See also Ariz. Pub. Serv. Co. v. U.S. EPA, 562 F.3d 1116, 1123 n.5 (10th Cir. 2009); Solis v. Summit Contractors, Inc., 558 F.3d 815, 823 (8th Cir. 2009); Estate of Focardi v. Commissioner, T.C. Memo. 2006-56 (“Our view is farther supported by the well-established principle that the judiciary should accord substantial deference to the Commissioner’s interpretation of Treasury regulations”). The Court recognizes that respondent may argue that the decisions we rely upon, Bakersfield Energy Partners, LP v. Commissioner, 568 F.3d 767 (9th Cir. 2009), and Salman Ranch Ltd. v. United States, 573 F.3d 1362 (Fed. Cir. 2009), holding that the limitations period had expired before Sept. 24, 2009, do not, in his opinion, make it so. There are 11 other Courts of Appeals and the Supreme Court still to be heard from, and by accepting as settled law the Bakersfield and Salman Ranch results our rationale may, in respondent’s view, also beg the question. Respondent, however, cites no court authorities equivalent to those of the appellate court decisions, and although he cites the temporary regulations, courts have traditionally determined the meaning of statutes. See Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843 n.9 (1984) (stating that “The judiciary is the final authority on issues of statutory construction”). Thus we believe our position is appropriate. We address in section III below why in addition to Bakersfield Energy Partners, LP v. Commissioner, supra, and Salman Ranch Ltd. v. United States, supra, we conclude that the 3-year limitations period applied to this case before Sept. 24, 2009. We also recognize that respondent could amend the temporary regulations’ effective/applicability date provisions and file renewed motions to reconsider and to vacate based on those amended provisions, thereby extending this dispute to yet another case. See Murrell v. Shalala, 43 F.3d 1388, 1389 (10th Cir. 1994). Respondent maintains that Colony, Inc. v. Commissioner, 357 U.S. 28 (1958), does not control the interpretation of secs. 6229(c)(2) and 6501(e)(1)(A), see T.D. 9466, supra, and that, in any event, the Supreme Court’s and respondent’s constructions are not necessarily inconsistent. We held otherwise in Bakersfield Energy Partners, LP v. Commissioner, 128 T.C. 207 (2007), and in our Sept. 1, 2009, opinion in this case. See Intermountain Ins. Serv. of Vail, LLC v. Commissioner, T.C. Memo. 2009-195. We rejected respondent’s arguments in the process, and rehashing them now even in this context is not necessary. See Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998). As we noted previously, we are hesitant to contradict the Supreme Court’s ruling in Colony. See Intermountain Ins. Serv. of Vail, LLC v. Commissioner, supra n.5. The Supreme Court has advised lower courts that “If a precedent of this Court [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the * * ** [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.” Rodriguez de Quijas v. Shearson/ Am. Express, Inc., 490 U.S. 477, 484 (1989). We rule that our analysis here of the legislative history behind the Colony decision provides further, and we believe determinative, support for those opinions. In a concurring opinion, Justice Stevens suggested that this holding “would not necessarily be applicable to a decision by this Court that would presumably remove any pre-existing ambiguity.” Natl. Cable & Telecomms. Association v. Brand X Internet Servs., 545 U.S. 967, 1003 (2005) (Stevens, J., concurring). Justice Stevens’ suggestion has indeed sparked debate over the applicability of Brand X. Although that debate is still largely open, we note, without approval or disapproval, that the U.S. Court of Appeals for the Tenth Circuit has held that Brand X does apply when the prior judicial construction is the Supreme Court’s. See Hernandez-Carrera v. Carlson, 547 F.3d 1237, 1248 (10th Cir. 2008) (“[W]e conclude that the holding of Brand X applies whether the judicial precedent at issue is that of a lower court or the Supreme Court.”). The second step of Chevron specifies as follows: If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute. [Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. at 843; fn. refs, omitted.] In our Sept. 1, 2009, opinion, we indicated that, absent stipulation to the contrary, this case may be appealable to the Court of Appeals for the Eighth, Tenth, or D.C. Circuit. See Intermountain Ins. Serv. of Vail, LLC v. Commissioner, T.C. Memo. 2009-195 n.4 (citing Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971)). We did not answer the question of proper venue and do not do so now. Id. [18] See Catawba County v. EPA, 571 F.3d 20, 35 (D.C. Cir. 2009) (“To be sure, a statute may foreclose an agency’s preferred interpretation despite such textual ambiguities if its structure, legislative history, or purpose makes clear what its text leaves opaque.”); North Dakota ex rel. Olson v. Ctrs. for Medicare & Medicaid Servs., 403 F.3d 537, 539-540 (8th Cir. 2005); see also Miccosukee Tribe of Indians v. United States, 566 F.3d 1257, 1273 (11th Cir. 2009); New York v. U.S. Dept. of Health & Human Servs.' Admin, for Children & Families, 556 F.3d 90, 97 (2d Cir. 2009); Natural Res. Def. Council v. U.S. EPA, 526 F.3d 591, 603 (9th Cir. 2008); Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359-1360 (Fed. Cir. 2007); Succar v. Ashcroft, 394 F.3d 8, 22-23 (1st Cir. 2005). But see United States v. Geiser, 527 F.3d 288, 292 (3d Cir. 2008); Bankers Life & Cas. Co. v. United States, 142 F.3d 973, 983 (7th Cir. 1998). The Supreme Court has sent mixed signals about the use of legislative history in Chevron step one. In Chevron itself, the Court considered legislative history as part of step one. Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. at 862. It has continued to do so in more recent opinions, and we deduce that it intends to continue this practice. See Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 587—590, 600 (2004); see also Zuni Pub. Sch. Dist. No. 89 v. Dept. of Educ., 550 U.S. 81, 90-91 (2007). Nevertheless, on occasion, the Court has stopped short of employing traditional tools of statutory construction, including legislative history. See Negusie v. Holder, 555 U.S. _, _, 129 S. Ct. 1159, 1183 (2009) (Thomas, J., dissenting). Although we have found no opinion in which a court considered legislative history when applying Brand X, we see no reason why a court — if it considers legislative history when applying Chevron step one — would not also consider it when applying Brand X. Both parties also refer to the Supreme Court’s observation that “the conclusion we reach is in harmony with the unambiguous language of § 6501(e)(1)(A) of the Internal Revenue Code of 1954.” Colony, Inc. v. Commissioner, 357 U.S. at 37. We decline both parties’ requests to attach meaning to that statement. Hearings Before the House Comm, on Ways and Means, 73d Cong., 2d Sess. 139, 149 (1934); H. Rept. 704, 73d Cong., 2d Sess. 35 (1934), 1939-1 C.B. (Part 2) 554, 580; S. Rept. 558, 73d Cong., 2d Sess. 43-44 (1934), 1939-1 C.B. (Part 2) 586, 619. We recognize that Colony, Inc. v. Commissioner, 357 U.S. 28 (1958), predated both Chevron U.S.A. Inc. v. Natural Res. Def. Council, supra, and Natl. Cable & Telecomms. Association v. Brand X Internet Servs., supra, so that the Supreme Court could not have been aware of the standards against which its opinion would be tested. We agree, however, with the U.S. Court of Appeals for the Fourth Circuit, which stated that “[w]e * * * do not hold that a court must say in so many magic words that its holding is the only permissible interpretation of the statute in order for that holding to be binding on an agency.” Fernandez v. Keisler, 502 F.3d 337, 347 (4th Cir. 2007). See supra note 2; Intermountain Ins. Serv. of Vail, LLC v. Commissioner, T.C. Memo. 2009-195 n.3. Respondent suggests that the U.S. Court of Appeals for the Ninth Circuit, in Bakersfield Energy Partners, LP v. Commissioner, 568 F.3d 767 (9th Cir. 2009), invited respondent to issue the temporary regulations. The Court of Appeals acknowledged that the Supreme Court in Colony, Inc. v. Commissioner, supra, found sec. 275(c) to be ambiguous and stated that “The IRS may have the authority to promulgate a reasonable reinterpretation of an ambiguous provision of the tax code, even if its interpretation runs contrary to the Supreme Court’s ‘opinion as to the best reading1 of the provision.” Bakersfield Energy Partners, LP v. Commissioner, supra at 778 (quoting Natl. Cable & Telecomms. Association v. Brand X Internet Servs., 545 U.S. at 983). The Court of Appeals did not indicate definitively whether any such temporary regulations would actually trump the Supreme Court’s prior judicial construction. This may flow from the possibly unresolved issue of whether legislative history should be considered when applying Chevron step one. Compare Natural Res. Def. Council v. U.S. EPA, supra at 603 (“An examination of the statutory language and its legislative history assists us in this inquiry [Chevron step one]”.), with Schneider v. Chertoff, 450 F.3d 944, 955 n.15 (9th Cir. 2006) (“Although we cannot consider legislative history under the first prong of Chevron, * * * we note that the Secretary’s regulation subverts the very intent of the Nursing Relief Act.”). In any event, we will not speculate as to the precise meaning of the Court of Appeals’ statement, particularly when, as in this case, we are not bound by that court’s caselaw because this case is not appealable, absent stipulation to the contrary, to that court. See Golsen v. Commissioner, 54 T.C. at 757.