**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BURTON O. BENSON; ELIZABETH C.
BENSON,

                  *Petitioners,*

        v.

COMMISSIONER OF INTERNAL
REVENUE,

                  *Respondent.*

No. 07-72272

Tax Ct. No.
12967-00

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
January 12, 2009—San Francisco, California

Filed March 31, 2009

Before: J. Clifford Wallace, Jerome Farris and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Farris

## COUNSEL

John M. Youngquist, San Francisco, California, for petitioners Burton Benson and Elizabeth Benson.

Ellen Page DeSole, Department of Justice, Tax Division, Washington, D.C.; Michael J. Huangs, Department of Justice, Tax Division, Washington, D.C.; Nathan J. Hochman, Assistant Attorney General, for respondent Commissioner of Internal Revenue.

## OPINION

FARRIS, Senior Circuit Judge:

Burton and Elizabeth Benson, husband and wife, filed joint tax returns between September 1994 and December 1995 for

the years 1989, 1990, 1993, and 1994.[1] Burton was a retired Navy admiral and engineer, and was the 100 percent owner of Energy Research and Generation. ERG, a subchapter C corporation, filed its own tax returns and paid its own taxes. Burton Benson also owned a controlling interest—varying between one-half and two-thirds in the years at issue—in New Process Industries. NPI was a subchapter S corporation, or a passthrough entity, and therefore filed information returns. For tax purposes, its income was attributable to its equity partners.

NPI had no employees, and no written contracts with ERG, but did maintain a bank account, certain patent rights, and three parcels of real property in Oakland, California. During the period at issue, ERG transferred millions of dollars to NPI. In 1989, ERG received $483,098 from Hercules Aerospace Co. for an equipment purchase, then transferred the money to NPI. In 1990, NPI bought patent rights from ERG, and then immediately licensed the rights back to ERG in a retroactive licensing agreement. The result was that, in each relevant year, 10 percent of ERG's profits flowed to NPI for "royalties." The remainder of ERG's profits in each relevant year, less about $75,000, flowed to NPI for "engineering services." In each relevant year, ERG also paid rent to NPI for the use of real property at two plants.

These transactions were without economic substance. NPI had no relation to the Hercules transaction; the licensing agreement made no economic sense for ERG; there was no evidence that NPI had performed engineering services sufficient to justify the transfers; and ERG paid rent far in excess of its contractual obligations. Thus, these transactions functioned only to funnel money from ERG to NPI. Benson then used NPI's bank account funds for the "sole and exclusive

---

[1]We base our factual discussion on the Tax Court's unchallenged findings of fact in its 2004 memorandum opinion.

benefit of himself and his family." *Benson v. Comm'r*, 88 T.C.M. (CCH) 520 (2004).

Where a corporation provides an economic benefit to a shareholder with no expectation of reimbursement, the benefit is a "constructive dividend" and is taxable income. *Inland Asphalt Co. v. Comm'r*, 756 F.2d 1425, 1429 (9th Cir. 1985). ERG's payments to NPI were constructive dividends to the Bensons.

The Bensons also received constructive dividends directly from ERG, without passing through NPI. These dividends included a corporate paid life insurance policy; corporate paid car expenses; "directors' fees" paid directly to Benson family members; corporate paid non-business travel expenses; corporate paid legal fees for personal matters; corporate paid recreational expenses drawn from the "ERG-Recreation Fund"; and finally the imputed value of ERG's purchase of a large plot of real estate immediately adjacent to the Bensons' personal residence.

Of the Bensons' tax returns for each of the years at issue, none reported the constructive dividends. Of NPI's information returns for each of the same years, none reported the constructive dividends. In some instances, the NPI returns referred to relevant transactions, but these references were incomplete, misleading, or otherwise ambiguous. Transfers pursuant to the exclusive licensing agreement were labeled as "royalties," the purported engineering services labeled as "engineering services," and the excessive rent labeled as "rent."

As a result of these deficiencies, the Internal Revenue Service opened investigations of the Bensons' 1993 return in August 1995, and their other returns in March 1997. The Service referred the Bensons' audits to its criminal investigation division in May 1997, but in August 2000, the Department of Justice declined to prosecute.

In September 2000, more than three but fewer than six years after the returns were received, the Commissioner issued the Bensons notices of alleged fraud and deficiency for tax years 1989, 1990, and 1993. About a year later, the Commissioner issued a notice of deficiency for tax year 1994.

The Bensons challenged the Commissioner's determinations in the Tax Court. The Tax Court found no evidence of fraud, but mostly upheld the Commissioner's substantive deficiency determinations. In addition to the constructive dividends, the Bensons failed to report miscellaneous income, including forgiveness of debt and dividend income from an account in their son's name, and had made certain improper deductions. Altogether, the Tax Court's found that the Bensons' "omitted" gross income of $629,177 in 1989; $456,500 in 1990; $3,831,923 in 1993; and $469,713 in 1994. Based on these figures, the total deficiencies were $139,889 for 1989; $104,701 for 1990; $1,496,254 for 1993; and $140,714 for 1994.

The Bensons filed a motion for reconsideration on the grounds that the Commissioner's assessment was time-barred by 26 U.S.C. § 6501(a)'s customary three-year statute of limitations. In response, the Tax Court issued a supplemental opinion. It held that, because the income "omitted" was more than 25 percent of the Bensons' reported gross income for each relevant year, the six-year statute of limitations applied under § 6501(e).[2] The court further found that, although the Bensons' misleading entries may have provided a "clue" about deficiencies, the entries did not adequately apprise the Commissioner of the nature or amount of the deficiencies, and therefore, the "adequate disclosure" or "safe harbor" clause of

---

[2]The statute reads, in pertinent part: "If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of the gross income stated in the return, the tax may be assessed . . . at any time within 6 years after the return was filed." 26 U.S.C. § 6501(e)(1)(A).

§ 6501(e)(1)(A)(ii) did not apply.[3] The Bensons timely bring this appeal.

**[1]** Interpretation of 26 U.S.C. § 6501 is a question of law that we review de novo. *Maciel v. Comm'r*, 489 F.3d 1018, 1027 (9th Cir. 2007). Section 6501(a) requires the IRS, after a return is filed, to assess taxes within three years. 26 U.S.C. § 6501(a). However, if the return omits gross income totaling more than 25 percent of the amount stated in the return, § 6501(e) extends the statute of limitations to six years. 26 U.S.C. § 6501(e)(1)(A). The three-year limit under § 6501(a) would bar assessment of deficient taxes for the Bensons' 1989, 1990, 1993, and 1994 returns. The six-year limit under § 6501(e) would not. The question is therefore whether the IRS is entitled to the six-year limit for those returns.

On appeal, the Bensons' do not dispute that for each of these years, their return did not properly account for income in excess of 25 percent of the income stated on the return. Nor do they dispute the Tax Court's computations or figures. Instead, the Bensons contend that their tax position was not an "omission" of gross income under the statute, but a "re-characterization" of the amounts in question.

**[2]** In *Colony, Inc. v. Comm'r*, 357 U.S. 28, 36-38 (1958), the Supreme Court held that the extended limitations period in the predecessor statute to § 6501(e)(1)(A) did not apply where a taxpayer understated gross profits he earned on the sale of real property, because he erroneously overstated his basis in the property. The court explained that the extended limitations period was meant to address "the specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes." *Id.* at 33.

---

[3]The Bensons do no challenge the Tax Court's ruling under § 6501(e)(1)(A)(ii) on appeal.

**[3]** The Court defined "omit" to mean "to leave out or unmentioned." *Id.* at 32; *see also Bakersfield Energy Partners, LP v. Comm'r*, 128 T.C. 207, 213 (2007) (distinguishing between an overstatement of basis in an asset sold and an "omission" under § 6501(e)); *Grapevine Imports, Ltd. v. United States*, 77 Fed. Cl. 505, 512 (2007) (holding that an overstated basis in property sold did not create "omitted" gross income).

**[4]** In reporting their gross income, the Bensons left out the ERG disbursements and NPI transfers that were later held to be constructive dividends. The Bensons' failure to report the dividends in their tax returns did not result from an overstatement of basis or other technical miscalculation, nor were the amounts accounted for elsewhere in the returns. Rather, the Bensons did not include these amounts in their returns at all. Thus, under the Supreme Court's definition in *Colony*, the Bensons "omitted" gross income, and the extended limitations period applies.

The Bensons' reliance on our precedents' interpretation of the statutory language is misplaced. In *Slaff v. Comm'r*, 220 F.2d 65 (9th Cir. 1955), a case we decided before *Colony* but which was cited approvingly therein, we held that the extended limitations period did not apply to a taxpayer who erroneously reported that he owed no taxes on income accrued overseas. The extended period did not apply because the taxpayer made "full disclosure" of the disputed amounts, actually writing on his return: "income received $3,300; exempt . . . therefore no taxable income." *Id.* at 68. Similarly, in *Lawrence v. Comm'r*, 258 F.2d 562 (9th Cir. 1958), we held that although a taxpayer did not include certain income as taxable, the extended limitations period did not apply because the taxpayer "made a full disclosure of his 'position' with respect to his gross income on his income tax return."

**[5]** These cases indicate that the extended limitations period does not apply where a taxpayer made an error in his or her

computation of gross income, yet fully disclosed the amounts underlying the error elsewhere in the tax return. These cases do not preclude application of the extended limitations period here. Unlike the taxpayers in *Slaff* and *Lawrence*, the Bensons did not disclose any of the amounts underlying their error.

**[6]** The Bensons argue that it would be "absurd to think" they should be required to report amounts which, according to their tax position at the time they filed their returns, were not gross income. Only after they had filed their tax returns, they observe, were the various ERG and NPI transfers construed to be gross income. However, it is undisputed that the Bensons' tax position was erroneous. The amounts were "properly includible" as gross income pursuant to § 6501(e)(1)(A), irrespective of the Bensons' mistaken belief to the contrary.

The Bensons also argue that *Colony* can be read to preclude the application of the extended limitations period because the Commissioner was able to discover the unreported income, despite their omissions. For this proposition, the Bensons cite the Court's language stating that the extended limitations period was meant to give the Commissioner additional time to "investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors." *Colony*, 357 U.S. at 36. The Bensons argue that the Commissioner was at no such special disadvantage here, as evidenced by the fact that the Commissioner actually detected the errors, and therefore the six-year period should not apply. However, the Supreme Court's gloss on the statutory language does not alter the statute's plain language, which simply provides that the Commissioner is afforded extra time whenever a taxpayer "omits" a certain amount from his or her gross income. 26 U.S.C. § 6501(e)(1)(A). The Bensons omitted the constructive dividends from their tax returns.

**AFFIRMED.**