T.C. Memo. 2014-131

UNITED STATES TAX COURT

THOMAS J. HECKMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24198-10.                                      Filed June 30, 2014.

<u>Troy Renkemeyer</u>, for petitioner.

<u>Christina L. Holland</u>, for respondent.


MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  Respondent determined that petitioner is liable for a

$204,998 deficiency in his Federal income tax for 2003 and the following excise

tax under section 4973(a)[1] for 2003, 2004, 2006, and 2007 and additions to tax

thereon under section 6651(a)(1) and (2):

---

[1]All section references are to the Internal Revenue Code as amended and in effect for the remaining year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

| [*2] Year | Excise tax | Addition to tax Sec. 6651(a)(1) | Sec. 6651(a)(2) |
|---|---|---|---|
| 2003 | $5,316 | $1,196.10 | $1,329.00 |
| 2004 | 5,309 | 1,194.53 | 1,327.25 |
| 2006 | 5,734 | 1,290.15 | 1,060.79 |
| 2007 | 5,346 | 1,202.85 | 668.25 |

The sole issue remaining for decision[2] is whether the six-year period of limitations under section 6501(e)(1)(A) applies to the assessment and collection of the deficiency in petitioner's Federal income tax for 2003 or whether the

_____

[2]The parties agree that:

a. Petitioner received a $137,726 distribution from an employee stock ownership plan in 2003.

b. Because of the resulting increase in petitioner's adjusted gross income in 2003, the otherwise allowable Schedule E offset for rental real estate activities of $25,000 is phased out.

c. Petitioner did not receive income from cancellation of indebtedness of $240,000 in any taxable year in issue.

d. Petitioner had net earnings from self-employment of $25,362 in 2003, which results in additional self-employment tax of $3,427 for that year. Petitioner is also entitled to a deduction of one-half of his recomputed self-employment tax.

e. Petitioner is not liable for excise tax for 2003, 2004, 2006, or 2007.

f. Petitioner is not liable for the additions to tax pursuant to sec. 6651(a)(1) and (2) for 2003, 2004, 2006, and 2007.

g. Any other adjustments in the notice of deficiency issued on July 30, 2010, are computational.

[*3] limitations period expired because he adequately disclosed on his Federal income tax return a $137,726 distribution from his employee stock ownership plan (ESOP).[3]

Background

This case was submitted fully stipulated pursuant to Rule 122. The stipulated facts are so found, and we incorporate by reference the parties' stipulation of facts and the accompanying exhibits. Petitioner resided in Missouri at the time he filed the petition.

Petitioner owned KC Investment Management, Inc. (KCIMI), an S corporation, from its incorporation in 1991 until 2001. On January 1, 2001, KCIMI established an ESOP, and the ESOP acquired 100% of KCIMI's stock, which was its only asset. Petitioner participated in the ESOP beginning in 2001, along with one other participant. In December 2002 KCIMI liquidated and transferred all of its assets and liabilities to the ESOP.

---

[3]The parties agree that, if the six-year limitations period for assessing a deficiency applies, the amount of petitioner's 2003 income tax deficiency is $38,623.

[*4]   In February 2003 Prairie Capital, LLC[4] (Prairie Capital), and SMR Holdings, LLC (SMR), were formed.  Upon formation, Prairie Capital and SMR each received a 50% undivided interest in each of the ESOP's assets (other than a note receivable that was contributed solely to Prairie Capital), and the ESOP held 100% of the interests in Prairie Capital and SMR.  Once the transfers were complete, the ESOP's only assets were the two LLC membership interests.  On April 8, 2003, the ESOP then distributed in kind to its participants' traditional individual retirement accounts (IRAs), held at First Trust.  Petitioner's partial interest in Prairie Capital was distributed to his IRA at First Trust.  Although the purported value of Prairie Capital shown on the First Trust account was $382,726, Prairie Capital's assets included a $245,000 note receivable, which the parties now agree was worthless.  Consequently, petitioner received a $137,726 distribution from the ESOP in 2003.

---

[4]Prairie Capital, LLC, timely filed its Forms 1065, U.S. Return of Partnership Income, for the calendar tax year ending December 31, 2003, and subsequent tax years through 2006.  The Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., attached to Prairie Capital's 2003 partnership return identifies the partner as "First Trust Company of Onaga FBO Thomas J. Heckman IRA", in its capacity as custodian of petitioner's IRA account.  The Form SS-4, Application for Employer Identification Number, which petitioner filed in 2003 to obtain a taxpayer identification number for Prairie Capital, identified petitioner as "general managing member of Prairie".  The Form 5498, IRA Contribution Information, for 2003 lists petitioner as the owner of the nominee account at First Trust Co. of Onaga (First Trust).

[*5]   On approximately August 15, 2004, petitioner filed his 2003 Form 1040, U.S. Individual Income Tax Return, on which he reported $281,378 of gross income that did not include the $137,726 ESOP distribution. Petitioner did not explicitly reference either the ESOP distribution to his IRA or his IRA's membership interest in Prairie Capital on his 2003 return or in any statement attached thereto.

The ESOP did not timely file a Form 5500, Annual Return/Report of Employee Benefit Plan, for 2001, 2002, or 2003. Respondent first became aware of the ESOP and the 2003 distribution to petitioner during the course of an unrelated examination in April 2007.[5] Respondent formally opened the ESOP examination in October 2007. At that time, the ESOP filed a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., related to the purported rollover. In November 2007 petitioner filed inconsistent Forms 5500 for 2001, 2002, and 2003 for the ESOP, using the Forms 5500 for 2006. The Schedule I, Financial Information--Small Plan, of the Form 5500 for 2001 reported plan assets of zero at the beginning of the year and $288,000 at the end of the year, income of $288,000 for the year, and

---

[5]Although multiple telephone discussions between petitioner and respondent occurred in April and May 2007, the first in-person meeting between them took place in August 2007.

[*6] no benefits paid for the year. The Schedule I of the Form 5500 for 2002 reported income of $232,452 for the year, plan assets of $288,000 at the beginning of the year and zero at the end of the year, and $520,452 of benefits paid. The Schedule I of the Form 5500 for 2003 reported no income for the year, plan assets of $520,452 at the beginning of the year and zero at the end of the year, and $520,452 of benefits paid. Before July 30, 2010, respondent sent the ESOP an initial notice of the revocation of its status as a qualified plan.

On July 30, 2010, more than three years but less than six years after petitioner filed his 2003 return, respondent mailed to petitioner a notice of deficiency for 2003, 2004, 2006, and 2007. The notice of deficiency determined, inter alia, that petitioner had received a $233,930.03 taxable distribution from the ESOP in 2003 and provided the following explanation:

> The KC Investment Management, Inc. Employee Stock Ownership Plan (ESOP) did not meet the requirements under IRC section 401(a) for qualified status. Your distribution from a non-qualified plan is not eligible for a tax free rollover into your Individual Retirement Account. The amount of the distribution is taxable in the year received (2003).

> In the alternative, it is determined that the transfer, whether direct or indirect, in 2003 from the ESOP's trust to the IRA of Thomas J. Heckman in the amount of $233,930.03 is includible in the income of Thomas J. Heckman under IRC section 61. Furthermore, such a transfer is neither an eligible rollover distribution from a

**[*7]**    qualified plan under IRC section 402(c) nor a direct trustee-to-trustee transfer under IRC section 402(e)(6).

On November 1, 2010, petitioner timely petitioned this Court, asserting, inter alia, that the statute of limitations barred assessment of his 2003 tax liability.

On April 12, 2012, respondent issued the final revocation letter, determining that the ESOP was not qualified under section 401(a) effective for the plan year ending December 31, 2001, and for all subsequent plan years.[6]  Respondent determined that the ESOP was not qualified on the grounds that:  (1) it did not satisfy the requirement of sections 401(a)(16) and 415; (2) it did not follow its plan document or maintain records showing how the ESOP was administered (including allocation records for the plan participants); and (3) it did not perform an independent appraisal of its stock as required by section 401(a)(28)(C).

More specifically, with respect to the first ground, the letter of revocation states:

> The ESOP's trust held the stock of KC Investment Management, Inc. ("Employer").  The ESOP has failed to provide the details of the acquisition of Employer stock, of any Employer contribution, or of any allocation of any Employer contribution.

---

[6]The ESOP did not:  (1) maintain allocation records for the plan participants; (2) issue any notices or consents to the plan participants; or (3) timely issue Forms 1099-R to the plan participants to report the distributions.  In addition, respondent retroactively revoked KCIMI's S-corporation election.

**[*8]**     The Employer did provide a Schedule K-1 it filed with its Form 1120S Income Tax Returns for tax years 2001 and 2002. These documents indicated that the Employer contributed the shares to the ESOP during 2001. Moreover, the 2001 Schedule K-1 prorated share of income (364 days of 365), showed that as of the acquisition date of the stock, the S-corporation's assets were valued at $318,611. Furthermore, the documents associated with the distribution of all the trust assets after the Employer discontinues operation in 2003 are predicated on contribution of Employer stock to the ESOP in 2001 valued at $318,611. The Service therefore concludes that assets worth at least $318,611 were contributed to the ESOP in 2001.

The ESOP plan document, section 3.4, provided that the date of allocation is the end of the ESOP's plan year. Section 2.01(a) provided that all who were employees on January 1, 2001 were participants in the ESOP. Moreover, IRC § 409(b) and Section 3.4 of the ESOP plan document both required allocation of the acquired Employer Stock as of the December 31 of the ESOP's 2001 plan year.

The Employer failed to provide records of stock allocation or participant accounts for 2001. Nonetheless, the Employer had only two employees on January 1, 2001; each earned $1,000 during plan year 2001. As a result, it must be concluded that on December 31, 2001, each participant received an allocation equal to 50% of the amount contributed. If a total of at least $318,611 was contributed, then each allocation was at least $159,305.50.

For 2001, the applicable IRC §415 limitation in 2001 was the lesser of 25% of compensation or $35,000. The Employer and the ESOP's delinquent Forms 5500 show that each of the two participants earned $1,000 of compensation in 2001. Applying IRC § 415's limits, the maximum allocation that could have accrued to each participant's account was $250. Therefore, given the allocations that the Service has concluded occurred in 2001 by operation of the ESOP's plan document and the law, each of the two participants received excess annual additions equal to $159,055.50 for 2001.

**[*9]**        Based on the ESOP plan document section 3.03, these excess annual additions were to be placed in a suspense account and allocated in subsequent periods.  Notwithstanding this written requirement, the Employer failed to provide any records showing the establishment of a suspense account that would have held excess contributions.  Further, the reason for the excess did not meet the provisions of Treas. Reg. § 1.415-6(b)(6), therefore the law did not authorize the creation of such a suspense account.

The Service concludes, based on the evidence provided, that the 2001 contributions were left to benefit each of the two participants equally (that is 50% per participant), and were later distributed to a traditional Individual Retirement Account (IRA) for the benefit of each participant in 2003.  Based on these facts, the Service concludes that contributions in excess of the IRC § 415 limit for 2001 remained in the trust, and that therefore the annual additions in plan year 2001 made on behalf of each of the two participants exceeded the limits imposed by IRC § 415(c).  Holden v. Commissioner, T.C. Memo. 2011-2 (2011).  The ESOP thus failed to meet the requirements of IRC § 401(a)(16) for 2001 and all subsequent plan years.

Petitioner did not file a petition in this Court appealing the revocation letter. Consequently, respondent's retroactive disqualification of the ESOP is final.

As a result of the retroactive revocation of the ESOP's status as a qualified plan, the parties agree that the transfer of the membership interest in Prairie Capital to petitioner's IRA account was ineligible as a rollover distribution. Accordingly, to the extent the statute of limitations does not otherwise preclude respondent from assessing tax on the distribution, the parties further agree that petitioner received a $137,726 distribution from the ESOP in 2003 that is

**[*10]** includible in his income for that year and that exceeds 25% of the amount of gross income stated on his 2003 tax return.

## Discussion

The issue before us is whether the six-year period of limitations under section 6501(e)(1)(A) applies to the assessment and collection of the deficiency in petitioner's 2003 Federal income tax. Pursuant to section 6501(a), the amount of any tax imposed shall be assessed within three years after the return was filed. Section 6501(e)(1)(A) extends the three-year period of limitations to six years where the taxpayer "omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return". In computing the amount of gross income omitted, any amounts "disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item" are not taken into account. Sec. 6501(e)(1)(A)(ii).[7]

The bar of the statute of limitations is an affirmative defense, and the party raising this defense must specifically plead it and prove it. Rules 39, 142(a); Mecum v. Commissioner, 101 T.C. 374, 382 (1993), aff'd without published

---

[7]In the 2010 amendment to sec. 6501 enacted by the Hiring Incentives to Restore Employment Act, Pub. L. No. 111-147, sec. 513(a)(2)(A), 124 Stat. at 112 (2010), this provision was moved to sec. 6501(e)(1)(B)(ii).

[*11] opinion, 40 F.3d 385 (5th Cir. 1994). If the taxpayer establishes a prima facie case that the three-year period of limitations precludes the Commissioner from assessing a tax deficiency, the burden of going forward then shifts to the Commissioner to introduce evidence that the assessment is not barred by the statute of limitations; if the Commissioner makes such a showing, the burden of going forward with the evidence shifts back to the taxpayer. Mecum v. Commissioner, 101 T.C. at 382-383.

Although respondent issued the notice of deficiency more than three years after petitioner filed his return for 2003, the parties agree that petitioner omitted more than 25% of the amount of gross income on his 2003 return ($137,726 ÷ $281,378 = 0.49). Therefore, the burden of going forward under section 6501(e) shifts to petitioner, who must establish that he gave "a statement adequate to apprise the Commissioner of the nature and amount of the item omitted." See Univ. Country Club, Inc. v. Commissioner, 64 T.C. 460, 468 (1975); Hines v. Commissioner, T.C. Memo. 1989-17, aff'd without published opinion, 893 F.2d 1330 (3d Cir. 1989). Whether petitioner gave adequate notice is a question of fact. See Whitesell v. Commissioner, 90 T.C. 702, 707-708 (1988); Univ. Country Club, Inc., v. Commissioner, 64 T.C. at 468. The adequacy of a disclosure is

**[\*12]** judged by a reasonable person standard. Univ. Country Club, Inc. v. Commissioner, 64 T.C. at 471.

The Supreme Court stated in Colony, Inc. v. Commissioner, 357 U.S. 28, 36 (1958), that the purpose of the six-year limitations period is to give the Commissioner additional time to make an assessment because he is at a "special disadvantage in detecting errors" because of a taxpayer's omission to report some taxable income on his return. See Benson v. Commissioner, 560 F.3d 1133, 1137 (9th Cir. 2009), aff'g T.C. Memo. 2006-55. In determining whether adequate disclosure has been made under section 6501(e)(1)(A)(ii), we examine whether the return offered a "clue" regarding the existence, nature, and amount of omitted income. Quick Trust v. Commissioner, 54 T.C. 1336, 1347 (1970), aff'd, 444 F.2d 90 (8th Cir. 1971). For a disclosure to be adequate, it "must be sufficiently detailed to alert the Commissioner and his agents as to the nature of the transaction so that the decision as to whether to select the return for audit may be a reasonably informed one." Estate of Fry v. Commissioner, 88 T.C. 1020, 1023 (1987).

Section 6501(e)(1)(A)(ii) requires that any disclosure of gross income be made "in the return, or in a statement attached to the return". Petitioner's 2003 return does not make any reference to interest in or a distribution or income from

**[*13]** the ESOP, his First Trust IRA, Prairie Capital, and it does not disclose in any manner a distribution or income from or attributable to the ESOP, his IRA, or Prairie Capital. Nor is there an attachment to the return that does so. Therefore, petitioner's 2003 individual return offers no "clue" as to the existence, nature, or amount of the omitted income.

Petitioner takes the position that the statements made on Prairie Capital's 2003 partnership return and other filings "should be taken as an 'adjunct' to petitioner's Form 1040", thus providing a "clue" to the existence of his omission from gross income. Petitioner relies on the following documents as evidence of his adequate disclosure: (1) the Schedule K-1 attached to Prairie Capital's 2003 partnership return that identifies the partner as "First Trust Company of Onaga FBO Thomas J. Heckman IRA"; (2) the Form SS-4, which he filed in 2003 to obtain a taxpayer identification number for Prairie Capital, identifying petitioner as "general managing member of Prairie"; and (3) the Form 5498, which lists petitioner as the owner of the nominee account at First Trust. To the contrary, no statement on any of those documents offers any "clue" as to the existence, nature, or amount of the omitted income. At best, they reveal only that petitioner and/or his IRA are members of Prairie Capital.

**[\*14]** Petitioner principally cites the Court of Appeals for the Eighth Circuit's opinion in Benderoff v. United States, 398 F.2d 132 (8th Cir. 1968), for the proposition that this Court may consider information other than that on a taxpayer's return to establish sufficient disclosure. We have considered this argument but conclude that petitioner's reliance on Benderoff is misplaced because the facts in this case are readily distinguishable. In Benderoff, the taxpayers' individual return specifically referred to their income derived from a subchapter S corporation, clearly stating the name of the corporation and the amount of their share of the corporation's undistributed corporate income. Therefore, the Court of Appeals looked beyond the taxpayer's individual return. Here, in contrast, petitioner stipulated that he did not disclose his participation in the ESOP or its distribution to his IRA on his 2003 return or in any statement attached thereto. Consequently, we reject his assertion that we may look beyond his individual return because we do not believe that the return offered the necessary "clue" required to disclose the omitted income.

Our holding is consistent with other cases where the taxpayer's return did not contain some reference to a separate document from which the omission of income could be ascertained. See, e.g., Taylor v. United States, 417 F.2d 991, 993-994 (5th Cir. 1969) (taxpayer did not make an adequate disclosure where his

[*15] tax return referred neither to the subchapter S corporation nor to the distribution he received); Gouveia v. Commissioner, T.C. Memo. 2004-256 (holding that the six-year period of limitations applied because the taxpayers omitted from gross income an amount of trust income properly includible on their return in excess of 25% of the gross income they reported, and the Commissioner was not apprised of the nature and amount of the omitted income); Connell Bus. Co. v. Commissioner, T.C. Memo. 2004-131 (the trust returns were not considered when determining the amount of gross income omitted under section 6501(e)(1) because the taxpayer's returns made no reference to the trust or the trust's returns).[8]

Petitioner also contends that by communicating with respondent in 2007 regarding the audit, he adequately disclosed the omitted income and that respondent unnecessarily delayed the process by failing to take prompt action. Even if petitioner provided such oral notice, the notification given three years after a return is filed is not a disclosure "in the return, or in a statement attached to the

_____

[8]See also Benson v. Commissioner, T.C. Memo. 2006-55 (Commissioner need only consider the taxpayer's return and original returns of the listed passthroughs; Commissioner need not consider the C corporation returns), aff'd, 560 F.3d 1133 (9th Cir. 2009); Edelson v. Commissioner, T.C. Memo. 1993-511, 1993 WL 453456, at *4 ("[T]he fact that information may have been furnished to respondent in connection with other returns is not enough to comply with these explicit requirements.").

[*16] return", as required by section 6501(e)(1)(A)(ii).  Moreover, any delay by the Commissioner after receiving such late oral notice of an omission of gross income does not invalidate a notice of deficiency sent before the expiration of the six-year period when it otherwise applies.

Finally, petitioner cites Rev. Rul. 55-415, 1955-1 C.B. 412, to support his argument that disclosure on a partnership return is sufficient for the adequate disclosure exception under section 6501(e)(1)(A)(ii).  We think petitioner's reliance on Rev. Rul. 55-415, supra, is misplaced.  The revenue ruling held that, for purposes of section 275(c) of the Internal Revenue Code of 1939 (the predecessor of section 6501(e)), a proportionate share of gross partnership income is imputed to an individual partner in determining his reportable gross income for purposes of determining whether there was an omission of 25% of gross income.  But in this case no return filed by the ESOP or any other entity indicates in any way the $137,726 distribution from the ESOP to the participants' IRA.  The only return that gives a "clue", i.e. guiding information, that the ESOP made a distribution to petitioner in 2003 is the Schedule I of the Form 5500 the ESOP filed for 2003, reporting plan assets of $520,452 at the beginning of the year and zero at the end of the year and $520,452 of benefits paid.  Since that return was

**[\*17]** not filed until 2007, it cannot be deemed a disclosure on petitioner's 2003 return, which was filed in 2004.

In sum, petitioner has not met his burden to establish that he adequately disclosed to the Secretary (or his delegate respondent) the nature and amount of his omitted income. He disclosed the ESOP distribution neither on his 2003 income tax return nor in any attached statement. He simply failed to provide a "clue" as to the omitted income, giving no indication that relevant information may have been contained elsewhere. Thus, we will not look beyond petitioner's 2003 return to determine whether his omitted income was adequately disclosed.

Accordingly, we conclude on this record that petitioner failed to apprise respondent of the nature and amount of the omitted income. Therefore, we hold that respondent is entitled to the six-year period of limitations pursuant to section 6501(e)(1)(A), and the determination with respect to petitioner's 2003 tax year was timely.

In reaching our holding, we have considered all arguments made by the parties, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

**[*18]**     To reflect the foregoing and the parties' agreements regarding all other

issues,

<u>An appropriate decision will be</u>

<u>entered</u>.